**244**

Joseph J. KELLY
v.
The UNITED STATES.
No. 626-53.

United States Court of Claims.
Jan. 31, 1956.

Charles P. Kelly, Boston, Mass., for plaintiff.

Francis X. Daly, Washington, D. C., with whom was Acting Asst. Atty. Gen., George S. Leonard, for defendant.

Before JONES, Chief Judge, and LITTLETON, WHITAKER, MADDEN and LARAMORE, Judges.

LARAMORE, Judge.

Plaintiff, a veteran of World War II, sues for the difference between his pay as a rating specialist, GS–12, and his pay as an adjudicator, GS–9, from August 28, 1952, on the ground that his reduction in force as a GS–12, which necessitated his taking a position as a GS–9, was illegal. Plaintiff further asks this court to reassign him to the position of rating specialist (occupational), in accordance with the terms of the Civil Service decision of June 20, 1952.

A summary of the facts is as follows: Plaintiff, an employee of the Veterans' Administration, Boston regional office, for more than ten years, was separated on June 1, 1952, in a reduction-in-force action, from the position of rating specialist (legal), GS–12. His first position with that agency was as adjudicator, GS–9; in 1945 he was promoted to the position of rating specialist (legal), GS–12, as a member of one of the rating boards. A rating board consists of three members: rating specialist (legal), rating specialist (occupational), and rating specialist (medical). The primary

function of a rating board is to consider veterans' disability claims for possible service connection, and to evaluate the degree of disability. The aforementioned reduction-in-force action eliminated one of the nine boards then functioning, necessitating the separation of three board members. Those members reached for separation were determined on the basis of retention registers which were maintained.

Prior to April 15, 1952, the legal and occupational members of rating boards in the Boston regional office performed the duties of both positions interchangeably, without regard to their civil service classification. Because of this, a single retention register was maintained for nonmedical members of the boards, i, e., legal and occupational. On this register was merged the names of all legal and occupational board members in the order of their respective retention priority, for reduction-in-force purposes. The retention register for medical members of boards was separate and distinct, listing only medical members, according to their retention priority.

On April 15, 1952, after receipt of letter dated March 28, 1952, from the central office of the Veterans' Administration, Washington, D. C., announcing the adjustment in the table of organization, requiring the elimination of one board, the Boston office issued a memorandum stating that thereafter it proposed to maintain separate retention registers for legal and occupational members, for reduction-in-force purposes, instead of the merged, single register for both classifications, legal and occupational, theretofore maintained.

Shortly before May 1, 1952, an occupational member of one of the rating boards resigned to enter military service, leaving only two board members to be eliminated.

On May 1, 1952, plaintiff, a legal member, and a medical member were issued reduction-in-force notices, terminating their positions, effective June 1, 1952. On that date, plaintiff had a total of 11 retention credits, and had a permanent classification, PA–1, in the position of rating specialist (legal), grade GS–12. PA–1 is a symbol meaning a permanent civil service employee with a veteran's preference. Also on that date, May 1, 1952, there was retained a board member, Mr. Emlyn Mitchell, then occupying the position of rating specialist (occupational), grade GS–12, in temporary status TA–1, and who had 10 retention credits. TA–1 is a symbol which refers to temporary or indefinite status held by a civil service employee with a veteran's preference.

When plaintiff received notice of his separation on May 1, 1952, he was informed by a personnel officer that he would be reassigned to position of authorization officer, GS–11. He protested this reassignment to lower grade, and claimed right of reassignment to position of rating specialist (occupational), GS–12, then occupied by Mr. Mitchell in a temporary status, TA–1, who was in a lower retention group, and who had fewer retention points than plaintiff. Plaintiff contended he was qualified to perform duties of that position, having performed them interchangeably with his duties of rating specialist (legal) as a member of a rating board for seven years, and other experience. Plaintiff took an appeal to the First U. S. Civil Service Regional Office on May 2, 1952. On May 19, 1952, he accepted the position of authorization officer, GS–11, under protest, reserving his right of appeal which had already been entered. A hearing was held on June 3, 1952.

On June 20, 1952, plaintiff's appeal was sustained, holding, among other findings, that

"* * * It is our view that because of the manner in which the Boards have operated Mr. Kelly is qualified to assume the duties of the position of Rating Specialist, Occupational, and to perform those duties without the need for special training; that he has the necessary background to enable him to be an occupational consultant to the other

board members as contemplated in the revised position description by virtue of his background in the Employment Service and as a board member for so long a period of time while Legal members and Occupational members served interchangeably. It is accordingly the decision of this office that Mr. Kelly's reassignment involving a reduction in grade was not a reasonable one and cannot be approved. It is therefore recommended that he be restored to his former position retroactively to the date of his change to lower grade; and if he may not be properly retained therein, that he be considered for reassignment in accordance with Section 20.9 and the contents of this letter. Your attention is kindly invited to the provisions of Section 20.15 of the Retention Preference Regulations which makes the recommendation of this office mandatory unless further appeal is made to the U. S. Civil Service Commission, Washington, D. C., within seven (7) days from the date of receipt of this letter. Please notify this office of action taken within seven (7) days."

The Boston regional office appealed on June 25, 1952, from the foregoing decision but was directed by the Veterans' Administration, Washington, D. C., to abandon the appeal and abide by the decision. Accordingly, the Boston regional office gave written notice on July 10, 1952, that it had abandoned its appeal.

The officials of the Boston regional office did not agree with the decision that plaintiff was qualified to perform the duties of rating specialist (occupational) and made no effort to reassign him to that position. They were completely aware of the facts that plaintiff could not, because of the personnel ceiling that had been established by the table of organization on June 1, 1952, be reassigned to his former position and that if he were so assigned, he could not be properly retained therein. However,

on July 9, 1952, the day prior to withdrawal of their appeal, in a telegram to the Central Office of the Veterans' Administration, Washington, D. C., it requested authority to increase the ceiling of the Adjudication Division by one (1), in order to establish an interim position of rating specialist (legal), GS–12, for a period of 30 days in order to "restore" plaintiff to position of rating specialist (legal), purportedly in compliance with decision of June 20, 1952, of the First Civil Service Regional Office. This request was repeated in a subsequent telegram of July 16, 1952. Meantime, on July 14, 1952, Mr. Mitchell who had been retained in temporary status, TA–1, in the position of rating specialist (occupational) since, and before, May 1, 1952, was converted or promoted from temporary status, TA–1, to permanent status, PA–1, by the Boston regional office, which took action under the general authority of the Whitten Rider. On June 5, 1952, section 1310 of the Supplemental Appropriations Act, 1952, 65 Stat. 736, 757, as amended, 66 Stat. 122, was amended to permit any agency to promote an employee permanently to a position under certain conditions. In accordance with that act (known as the Whitten Rider) the central office of the Veterans' Administration on July 11, 1952, sent a telegram to its various regional and other offices, stating that the Administrator had approved permanent grade conversions of all the employees who were serving under indefinite promotions, in retention group TA–1 on July 14, 1952, in certain specified grades, including grades GS–11 and 12. Pursuant to this authority, Mr. Mitchell's indefinite promotion to rating specialist (occupational), GS–12, was converted from indefinite to permanent, and his retention subgroup was changed from TA–1 to PA–1.

Finally, the Deputy Administrator of the Veterans' Administration authorized an increase, on July 21, 1952, in the personnel ceiling to provide for one additional position of rating specialist (legal), GS–12, in the Boston regional

office for a period of 60 days. On the following day, July 22, 1952, plaintiff was informed by the personnel director of the Boston office that he would be reassigned to the newly created position of rating specialist (legal), retroactively to June 1, 1952, in compliance with the decision of June 20, 1952, of the Civil Service Commission; that this position would be eliminated on August 27, 1952, and plaintiff would then be reassigned to the position of adjudicator in grade GS–9, which was three grades lower.

Two days later, on July 24, 1952, when plaintiff was temporarily restored to duty as a legal rating specialist (though he was then unaware of such action until notified the following day), the authorization officer in grade GS–11, whom plaintiff had replaced on May 29, 1952, was restored to that position as authorization officer in grade GS–11; his promotion to that position was converted from indefinite to permanent, and his retention subgroup was changed from TA–1 to PA–1. Retention registers were prepared the next day, July 25, 1952, noting these changes.

On July 25, 1952, plaintiff was called into the office of his superior, the adjudication officer, and was handed two notices: the first, which was dated July 24, 1952, the previous day, stated that plaintiff was restored to duty, effective June 1, 1952, as rating specialist (legal) in grade GS–12, in accordance with Civil Service letter of June 20, 1952; the second, a reduction-in-force notice dated July 25, 1952, stated that the plaintiff would be separated from his position as rating specialist (legal) at the close of business on August 27, 1952. As a result of these actions, the reduction-in-force notice of May 1, 1952, was cancelled and the plaintiff was paid retroactively to June 1, 1952, as rating specialist (legal), GS–12. The duration of this temporary position was 2 months and 27 days.

Under protest, reserving his right of appeal, plaintiff accepted the new assignment. On August 28, 1952, he was given notification of personnel action showing his change of position from rating specialist (legal), GS–12, to adjudicator, GS–9, and a change in salary from $7,840 per annum to $5,810 per annum. He has remained in, and is still in, that position.

On July 25, 1952, when plaintiff was notified that he would be separated from his temporary position as rating specialist (legal) at the close of business on August 27, 1952, the personnel officer of the Boston office prepared a retention register for rating specialist (legal), showing that plaintiff was number nine on the list and, as already stated, the number of rating specialists (legal), which the Boston office was authorized to employ, was eight.

As a result of the promotions described hereinbefore, the new retention register for occupational specialists showed that Mr. Mitchell was then in retention subgroup PA–1. Likewise, the new retention register for authorization officers in grade GS–11 showed that the employee whom plaintiff had replaced on May 29, 1952, was also in retention subgroup PA–1. Therefore, plaintiff was advised that he could not "bump" either of these employees and that the best offer the Boston regional office could make him at that time was the position of adjudicator in grade GS–9.

Plaintiff appealed in writing to the first region of the Civil Service Commission in Boston, Massachusetts. In his appeal, plaintiff contended, in substance, that the Veterans' Administration had not complied with the Civil Service Commission decision of June 20, 1952, because it was known at the time the decision was rendered that he could not be properly retained in his former position of rating specialist (legal); that it was incumbent upon the Veterans' Administration to assign him to the position of rating specialist (occupational) since he was in a higher retention group than a rating specialist in a TA–1 lesser group; that the Civil Service Commission had found that he was qualified to perform the duties of rating specialist (occupational) without the necessity of special training, and that the action of the Vet-

erans' Administration in securing a temporary increase in the table of organization for the purpose of restoring him to his former position for a short period of time was tantamount to a circumvention of the order issued by the Commission. Plaintiff's appeal was denied on September 23, 1952, which held that corrective action had been taken and further that there could be no interchangeability between the position of rating specialist (legal) and rating specialist (occupational). A further appeal to the Board of Appeals and Review of the Civil Service Commission, Washington, D. C., was denied on May 29, 1952, stating that corrective action had been taken. On October 27, 1953, plaintiff made a further request for reconsideration and an opportunity to appear personally before the Commission, but this request was denied. Having exhausted his administrative remedies, plaintiff then commenced suit in this court on November 18, 1952.

The issue in this case is whether or not the action taken by the Boston regional office of the Veterans' Administration properly complied with the June 20, 1952, decision of the Civil Service Commission.

When procedural requirements have been complied with, it has been held that the only basis for setting aside the action of an administrative officer is to show that the action was arbitrary, capricious, or so grossly erroneous as to imply bad faith. Love v. United States, 98 F.Supp. 770, 119 Ct.Cl. 486.

The first U. S. Civil Service Regional Office found that plaintiff was "no less qualified to hold the position of rating specialist, occupational" than any who had served in the office during the past seven years, and that plaintiff was qualified to assume the duties of the position of rating specialist, occupational. It further found that the plaintiff's reassignment involving a reduction in grade was not a reasonable one and "cannot be approved." The recommendation set forth in the decision was "that he be restored to his former position retroactive to the date of his change to lower grade;

and if he may not be properly retained therein, that he be considered for reassignment in accordance with section 20.9 and the contents of this letter." The decision went on to state that under the provisions of section 20.15 of the retention preference regulations, the recommendation is mandatory unless further appeal is made within seven days.

Section 20.9 of the Civil Service regulations provides as follows:

"20.9 Actions. * * *

"(b) *Reassignments to continuing positions in local commuting area.* Reassignment is required in lieu of separation or furlough, within the local commuting area, without interruption to pay status whenever possible, to an available position for which the employee is qualified, unless a reasonable offer of reassignment is refused. No displacement will be required to permit the reassignment of an employee unless such employee is qualified to perform the duties of the position in question without undue interruption to the work program: *Provided, however,* That in reassignments to other positions, in a reduction in force, employees will not be given physical examinations unless the positions to which reassignment is contemplated are arduous duty positions or unless the duties of the positions are such that physical deficiencies might endanger human life or result in serious property damage. No employee whose reassignment is proposed to the class of position indicated shall be disqualified on physical grounds unless the proposed disqualification has the prior approval of the Central Office of the Commission, if the positions are in the departmental service in Washington or the appropriate regional director, if in the field service. Subject to these conditions, reassignment is required in each of the following cases; * * * * "

An appeal was taken but later withdrawn by the Boston regional office on July 10, 1952.

Thus, under the decision of the First U. S. Civil Service Regional Office, plaintiff was found to be qualified as a rating specialist (occupational), and since he was a veteran with a higher retention rate than Mitchell (PA–1 as compared to TA–1), he should have at that time been reassigned to the position of rating specialist (occupational) in preference to Mitchell. However, the officials of the Boston regional office did not agree with the decision and made no effort to reassign plaintiff to that position. They were completely aware of the fact that plaintiff could not, because of the personnel ceiling that had been established by the tables of organization, be reassigned to his former position and that if he were so assigned, he could not be properly retained therein.

Therefore, on July 9, 1952, and later on July 16, 1952, the Boston regional office telegraphed the Deputy Administrator of the Veterans' Administration requesting authority to establish an interim position of rating specialist (legal), GS–12, for 30 days in order to restore plaintiff to his former position. The request was granted on July 21, 1952, and the following day plaintiff was informed he would be reassigned to the newly created position retroactive to June 1, 1952, *in accordance with the decision of June 20, 1952, of the Civil Service Commission;* and that this position would be eliminated on August 27, 1952 and plaintiff would be then reassigned to the position of adjudicator in grade GS–9. On July 25, 1952, plaintiff was called into the office of his superior and handed two notices in conformity with the information he received as just above noted. This was all done by the Boston regional office knowing that on June 5, 1952, section 1310 [1] of Public Law 253 of the 82d Congress was amended [2] to permit any agency to promote an employee permanently to a position if the promotion would not increase the number of employees holding permanent positions in that grade in the agency above the number in the grade in the same agency prior to September 1, 1950.

In accordance with that act, on July 11, 1952, the central office of the Veterans' Administration sent a telegram to its various regional and other offices stating that the Administrator had approved permanent grade conversions of all the employees with permanent tenure who were serving under indefinite promotion, demotion, or reassignment in retention group TA–1 on July 14, 1952, in certain specified grades, including grades GS–11 and 12. Pursuant to this authority, Mr. Mitchell's indefinite promotion to rating specialist (occupational), GS–12, was converted from indefinite to permanent and his retention subgroup was changed from TA–1 to PA–1. Also, on July 24, 1952, when plaintiff was temporarily restored to duty as a rating specialist, legal, the authorization officer in grade GS–11, whom plaintiff had replaced on May 29, 1952, was restored to his position and his promotion to that position was converted from indefinite to permanent. The result was that plaintiff could not "bump" either Mitchell or the employee whom he had replaced in grade GS–11.

■ Therefore, it seems clear and the commissioner of this court has found that the action taken by the Boston regional office of the Veterans' Administration was not a compliance in good faith with the Civil Service decision of June 20, 1952, for the reason the Veterans' Administration, with full knowledge that plaintiff could not be retained in his former position because of the reduction-in-force order, failed and refused to consider him for reassignment to the position of rating specialist (occupational), in accordance with section 20.9 of the retention preference regulation of the Civil Service Commission.

The temporary position of rating specialist (legal) was artificially created to prevent plaintiff's reassignment to the position of rating specialist (occupational), and had the further effect of reduc-

---

1. 65 Stat. 757.

2. 66 Stat. 122.

ing plaintiff to grade GS–9, three grades below that held by him on May 1, 1952, and reducing his salary from $7,840 per annum to $5,810 per annum.

After receiving notice that he would be separated from his temporary position, plaintiff appealed to the First Region of the Civil Service Commission in Boston, Massachusetts. In his appeal plaintiff *only* contended that the Veterans' Administration had not complied with the Civil Service decision of June 20, 1952. This appeal was denied on September 23, 1952, on the grounds that corrective action had been taken by restoring plaintiff to the position of rating specialist (legal), and further that the Veterans' Administration was warranted in establishing the rating specialist (occupational), in a separate competitive level from rating specialist (legal). Thereafter, the plaintiff appealed to the Board of Appeals and Review of the Civil Service Commission, Washington, D. C., which was denied on substantially the same grounds. Plaintiff made a request for reconsideration which was also denied.

The action of the Boston regional office of the Veterans' Administration in not "reassigning plaintiff to the position of rating specialist (occupational)," in conformance with the original decision of June 20, 1952, was arbitrary and not a compliance in good faith with said decision. Had there been good faith compliance at the time of the June 20, 1952, decision, there could have been no question of interchangeability, because the plaintiff could have and should have been assigned to the position of rating specialist (occupational), at that time. Plaintiff was found to be qualified for the position and the applicable regulations required that he be given the position. The device used by the Boston regional office of the Veterans' Administration creating a temporary position until Mitchell's job became permanent, was an exercise of bad faith and prevented plaintiff from obtaining reassignment pursuant to the June 20, 1952, decision.

The events occurring after the failure to reassign are of no significance in determining plaintiff's rights under the facts of this case. The First U. S. Civil Service Regional Office's affirmance of the Boston regional office's actions on the ground that the order was complied with, was clearly erroneous, and on the ground of interchangeability was irrelevant and is not binding on this court.

Plaintiff's request that this court reassign him to the position of rating specialist (occupational), is without merit inasmuch as this court can only render a money judgment. However, the plaintiff is entitled to recover the difference in salary he has received as an adjudicator, grade GS–9, and the salary of a rating specialist (occupational), grade GS–12, from August 28, 1952, to date of judgment.

Judgment will be suspended pending the filing of a stipulation showing the amount due.

It is so ordered.

JONES, Chief Judge, and MADDEN, WHITAKER and LITTLETON, Judges, concur.