Vincent L. SHAW

v.

The UNITED STATES.

No. 15–78.

United States Court of Claims.

April 30, 1980.

William L. Bart, San Jose, Cal., attorney of record, for plaintiff.

Ransey G. Cole, Jr., Washington, D. C., with whom was Asst. Atty. Gen. Alice Daniel, Washington, D. C., for defendant.

Before KASHIWA, KUNZIG and BENNETT, Judges.

ON PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND DEFENDANT'S CROSS–MOTION FOR SUMMARY JUDGMENT

KUNZIG, Judge:

Plaintiff is a former employee, GS–14, of the Department of Housing and Urban Development (HUD). HUD took steps to terminate plaintiff's employment shortly before his one-year probation period expired. Plaintiff challenged the termination and was temporarily reinstated after a decision of the Civil Service Commission's Board of Appeals and Review (Board). The Commissioners of the Civil Service Commission, however, reopened plaintiff's case and in a final decision upheld plaintiff's termination by HUD. Plaintiff then filed suit in this court requesting reinstatement, back pay and correction of his records. He contends the Commissioners lacked authority to reopen the Board's decision, that his termination notice was not timely served, that he was wrongfully terminated while on sick leave and that other procedural standards were breached. For the reasons stated below we conclude the Commissioners' decision upholding plaintiff's termination is correct and that his termination was otherwise procedurally and substantively proper.

On January 4, 1971, plaintiff was given a career-conditional appointment to the position of Director, Housing Services and Property Management Division, GS–14, in the Buffalo, New York, Area Office of HUD. The appointment was subject to a probationary period—one year in duration—beginning on the effective date of appointment.

On December 28, 1971, S. William Green, HUD New York Regional Administrator, prepared and mailed a memorandum addressed to plaintiff through the Buffalo Area Office Director notifying plaintiff that he would be terminated within his probationary period.

At approximately noon of December 29, 1971, (Wednesday) the Buffalo Area Office Director, Frank Cerabone, told plaintiff in person that he had recommended plaintiff's termination and that a written memorandum effecting his dismissal had been signed and mailed from New York City by Green. The termination memorandum by Green, dated December 28, 1971, stated in part:

Based on the recommendation of Mr. Cerabone, Buffalo Area Office Director, I regret to inform you that your services have not proved satisfactory. It is my understanding that you have been unresponsive to the team effort deemed necessary to the effective operations of the Division and that you have been unable to get along with the Director of the Operations Division and his staff.

During that afternoon of December 29, 1971, plaintiff mentioned his termination to one or two co-workers and experienced a "sudden onslaught of illness." He left the office early at 4:30 p. m. and drove to a hospital thirty miles away, the Tri-County Memorial Hospital in Gowanda, New York. He was admitted to the emergency room at 7:41 p. m. complaining of pains in his side.

At the hospital plaintiff underwent a series of tests and was released January 6, 1972.

Meanwhile, on December 30, 1971, a Thursday, at 11:30 a. m., plaintiff's termination notice arrived at the Buffalo office from HUD's New York Regional Office. An administrative employee of HUD's Buffalo office, Mrs. Ann Franceschini, changed the notice's effective date from January 3, 1972 to January 2, 1972, a change approved by a higher authority within the agency. Plaintiff, of course, had not reported to work that day nor had he notified the agency of his hospitalization. Since plaintiff's whereabouts were unknown, preparations were made to attempt delivery of the notice of termination by mail and messenger to plaintiff's home address. Specifically, office personnel, on December 30:

1. Dispatched the original notice by special delivery, return receipt requested, registered mail, to plaintiff's home address.

2. Dispatched by regular mail a copy of the notice to plaintiff's home address.

3. Sent an employee to plaintiff's home to effect personal delivery of a copy of the notice of termination. The employee found no one at plaintiff's home and slipped a copy of the notice under plaintiff's front door.

Mrs. Franceschini learned of plaintiff's hospitalization that afternoon from plaintiff's wife. Though the next day, December 31, was a federal holiday, Mrs. Franceschini went to HUD offices and dispatched to plaintiff at the hospital a Western Union telegram containing the specific language of the notice of termination. She asked Western Union to make personal delivery of the telegram, but on Monday, January 3, 1972, Western Union notified the HUD office that, "Party refused to accept message." [1] Plaintiff finally received a letter on January 7, 1972, notifying him of his termination, after his release from the hospital.

Plaintiff first attempted to appeal his termination as a probationary employee on the grounds of religious discrimination (plaintiff stated his religion as Methodist).[2] An investigation of the allegation of religious discrimination was initiated but by an affidavit of March 1, 1972, plaintiff withdrew the complaint. On April 26, 1972, the Director of the Civil Service Commission's New York Region (Regional Director) denied plaintiff's appeal. The Regional Director found, *inter alia*:

By letter, dated December 28, 1971, signed by the Regional Administrator, you were notified that you would be terminated during probation effective January 2, 1972, for unsatisfactory services. Accordingly, you were separated on January 2, 1972.

The Regional Director also stated that under § 315.804 of the Civil Service Regulations [5 C.F.R. § 315.804 (1972)] a probationary employee could not appeal a termination based on inadequate performance or conduct on the job. Civil Service Commission review of probationary employee terminations, the Regional Director stated, was limited basically to charges of discrimination.

Plaintiff appealed the Regional Director's decision to the Commission's Board of Appeals and Review (Board). In a decision of July 18, 1972, the Board determined that HUD's efforts to serve plaintiff his termination notice before the end of his probationary period were inadequate. Thus, the Board concluded plaintiff had completed his probationary period and was entitled to the procedural protections of regular employees. Plaintiff's restoration was recommended.

On July 28, 1972, the Commissioners of the the Civil Service rescinded the Board's decision and ordered reconsideration.[3] In a

---

1. Plaintiff's wife had apparently refused to accept the telegram at plaintiff's room in the hospital on December 31, 1971.

2. Plaintiff alleged he was discriminated against because he had failed to "imbibe sufficiently" because of his "methodist" (sic) religion.

3. The Commissioners reversed the Board's first decision because it was reached without notifying HUD of plaintiff's appeal and without inviting agency representation.

second decision of October 10, 1972, the Board affirmed its first decision of July 1972 and again recommended that plaintiff be restored retroactively to his employment. As of October 30, 1972, HUD restored plaintiff to employment but only on a temporary basis.

HUD asked the Commissioners to reopen the Board's decision again on November 29, 1972. The Commissioners did so on January 10, 1973. By decision of March 27, 1973, the Commissioners reversed the second Board decision which had ordered plaintiff's restoration. The Commissioners specifically determined that HUD's efforts to serve timely the notice of termination during plaintiff's probationary period constituted an "intelligent and diligent effort, in the circumstances," under the Federal Personal Manual Supplement 752–1, § S4–8, "Delivery of Notice" provisions. The Commissioners remarked that "The regulations do not require that the Notice of Termination actually be delivered, regardless of the cost or circumstances." Plaintiff's termination, the Commissioners found, was correctly effected within his probationary period. As a result of this second Commission decision HUD was given authority to proceed with plaintiff's termination which was completed March 28, 1973.

On March 30, 1973, plaintiff filed suit in the United States District Court for the Western District of New York alleging he was wrongfully terminated and that the Commission had no authority to reopen his case a second time. On June 7, 1977, that suit was dismissed without prejudice by stipulation of the parties. Plaintiff's petition in this court was filed (effective date) January 3, 1978.

Plaintiff's basic argument in this court is that the Commissioners lacked authority to reopen and reverse the Board's decision a second time. The Board's decision of October 10, 1972, reinstating plaintiff, it is argued, became final and conclusive when HUD failed to file a notice of appeal to the Commissioners within a specific time frame. Second, plaintiff argues his termination was in reprisal for a grievance he filed. In addition, plaintiff alleges several procedural violations, such as improper termination while he was on sick leave.

Defendant in response argues plaintiff's claim first accrued on January 2, 1972; the claim was not filed in this court until January 3, 1978, and is therefore barred by the six-year statute of limitations. 28 U.S.C. § 2501 (1976). Alternatively, plaintiff's petition should be deemed barred by the equitable doctrine of laches. On the merits, defendant insists pertinent regulations clearly gave the Commissioners authority to reopen plaintiff's case. Defendant emphasizes probationary employees have very limited rights. After giving the probationary employee a fair trial period, the Government needs only to provide a probationary employee written notice of termination, with a brief statement of the reasons, before the end of the probationary period. This was done in plaintiff's case; he was accorded all rights due a probationary employee and has no grounds to challenge his termination.

In view of the foregoing, the three questions before the court are: (1) whether plaintiff's claim is barred by the statute of limitations or by laches; (2) whether the Commissioners could reopen the second decision of the Board later to reverse that decision; (3) whether plaintiff's termination was for valid reasons and procedurally correct. We decide first that plaintiff's claim, under the doctrine of exhaustion of administrative remedies, is not barred by the statute of limitations or by laches. Second, the Commissioners could reopen the second Board decision as they did. Finally, plaintiff's termination was procedurally proper and supported by valid reasons. Consequently, we hold for defendant.

■ *Statute of Limitations.* In response to defendant's argument that plaintiff's claim is barred by the six-year statute of limitations, plaintiff argues his claim did not accrue until he had exhausted his administrative remedies; this did not occur

until the final decision of the Commissioners on March 27, 1973. The question is whether exhaustion of the administrative remedy in this case is mandatory or merely permissive; if exhaustion is mandatory then the statute of limitations would not begin to run on plaintiff's claim until "completion of that [administrative] process." *Friedman v. United States* 159 Ct.Cl. 1, 11, 310 F.2d 381, 387 (1962), *cert. denied sub nom. Lipp v. United States*, 373 U.S. 932, 83 S.Ct. 1540, 10 L.Ed.2d 691 (1963). *See Wright v. United States*, 205 Ct.Cl. 831 (1974).

In *Williams v. United States*, 193 Ct.Cl. 440, 444, 434 F.2d 1346, 1348–49 (1970) we held that a probationary employee was required to exhaust the mandatory administrative remedy and a portion of his claim was rejected for a failure to do so. There is, however, a slight but significant difference between *Williams* and this case, relating to the grounds upon which a probationary employee challenges his termination. During the time plaintiff was a probationary employee, *see* 5 C.F.R. § 315.804–§ 315.806 (1972), [as now printed, *see* 5 C.F.R. § 315.804–§ 315.806 (1979)] probationary employees could appeal their termination only when termination was for conditions arising before appointment, 5 C.F.R. § 315.805, or when an employee alleged the termination was based on discrimination because of race, color, religion, sex, or national origin. In *Williams* plaintiff presented allegations of racial discrimination. It was therefore appropriate for the court to rule plaintiff was mandatorily required to exhaust an administrative remedy expressly provided for his type of complaint.

The case this plaintiff presents is different, for he challenges his termination on grounds of neither a condition arising before his appointment nor on the basis of discrimination. For this reason the Regional Director logically rejected plaintiff's appeal as being outside the Commission's appellate review authority in his decision of April 26, 1972. The subsequent decisions in plaintiff's case do not discuss this point but it is easy to understand why the Board and then the Commissioners believed they were

acting within the regulations in deciding plaintiff's case. The thrust of plaintiff's argument is not merely a challenge to the *reason* for his dismissal as a probationary employee, he contends he in fact was *not a probationary employee at all*—that he completed his probationary period, thereby becoming entitled to the rights of regular employees, including rights of appeal within the Commission. We can find no direct precedent as to whether in such a case as this exhaustion of an administrative remedy should be deemed merely "permissive" or "mandatory." Sound policy, however, seems to call for exhaustion when individuals as plaintiff herein are challenging their very status as probationary employees. The Commission [now the Office of Personnel Management (OPM)] is certainly well qualified to assess whether an employee is a probationary employee or has duly completed the probationary period. As a general consideration the court would unquestionably benefit from OPM's opinion in such a case. Furthermore, as to the particular facts of this case it would strike us as somewhat unfair to rule plaintiff barred from this court when he has diligently and in good faith brought his case to the Commission and they confidently asserted jurisdiction. Hence, we hold that exhaustion of the administrative remedy in this case was mandatory. The statute of limitations did not begin to run until plaintiff had exhausted that remedy, which was March 27, 1973. The Commissioners' decision of that date itself told plaintiff: "This is the final administrative decision in this matter, and you have now exhausted all administrative rights and remedies." Plaintiff's claim, filed in this court January 3, 1978, was not barred by the statute of limitations. Nor do we find the equitable doctrine of laches appropriate, in view of plaintiff's efforts to exhaust administrative remedies. *See Cason v. United States*, 200 Ct.Cl. 424, 432, 471 F.2d 1225, 1229 (1973).

■ *Authority of the Commissioners to Reopen.* Plaintiff's central argument is that the Commissioners lacked authority to reopen the second Board decision and re-

verse it. Plaintiff claims his rights as a regular employee vested when HUD failed to seek review of the Board's second decision in a timely manner (within thirty days). For support of his position plaintiff refers to 5 C.F.R. § 772.312(b), a section prescribing a thirty-day period within which an agency challenging a Board decision may file a request to reopen with the Commissioners. Plaintiff also cites *Kelly v. United States*, 133 Ct.Cl. 571, 138 F.Supp. 244 (1956), *Feldman v. United States*, 149 Ct.Cl. 22, 181 F.Supp. 393 (1960) and *Goodwin v. United States*, 127 Ct.Cl. 417, 118 F.Supp. 369 (1954), for the proposition his rights vested as of the second Board decision. In reply, defendant points to 5 C.F.R. § 772.308 (1972)[4] "Review by the Commission" which permits Commission reopening.

We believe defendant's view of the matter is correct.

The regulation upon which plaintiff relies for his strict view of the time limitations for an agency request for reopening, 5 C.F.R. § 772.312(b) first appeared in the 1975 Code of Federal Regulations. Regardless of the precise date the regulation went into effect, it is clear it was not operative in January 1973 when the Commissioners reopened the Board's decision a second time. As defendant notes, the controlling regulation is 5 C.F.R. § 772.308 (1972); this regulation contains no specific time limitation as to when an agency must request reopening or when the Commissioners may order reopening. If an unreasonable length of time had passed after the Board's second decision, before HUD's request to reopen and the Commissioners' assent to reopen, we might question whether the delay unfairly prejudiced plaintiff. The Board, however, rendered its second decision October 10, 1972. HUD requested reopening on November 29, 1972, and that request was granted January 10, 1973. No regulation was violated by this procedure nor did an unreasonable length of time elapse. The Commissioners acted within the authority granted by 5 C.F.R. § 772.308 (1972) in reopening plaintiff's case.

The *Kelly, Feldman* and *Goodwin* decisions do not control the question in this case. First of all, none of these cases treats the authority of the Commissioners to reopen a decision. They discuss in general terms an employee's rights pursuant to a favorable Board decision. For example, *Kelly* found that an agency had wrongfully attempted to evade the Board's recommendation of full reinstatement by appointing an employee to an artificial, temporary position but soon thereafter placing him in a much lower position. There is no credible suggestion of improper agency subterfuge in this case. Plaintiff was indeed appointed to a temporary position but only for a period of time to cover appeals of his reinstatement, "pending final disposition of the case" as 5 C.F.R. § 772.308(b) (1972) permits. *See* n. 4, *supra.* The *Kelly* decision is therefore of no help to plaintiff. The *Feldman* and *Goodwin* decisions dealt with an employee's rights pursuant to the Veterans' Preference Act. Yet, that act applies "only to preference eligibles *who have completed their probationary period.*" *Williams v. United States*, 193 Ct.Cl. 440, 443, 434 F.2d 1346, 1348 (1970) (emphasis added). Plain-

---

4. 5 C.F.R. § 772.308 reads as follows:

   § 772.308 Review by the Commission.
   (a) The Commissioners may, in their discretion, reopen and reconsider any previous decision when the party requesting reopening submits written argument or evidence which tends to establish that:
   (1) New and material evidence is available that was not readily available when the previous decision was issued;
   (2) The previous decision involves an erroneous interpretation of law or regulation or a misapplication of established policy; or
   (3) The previous decision is of a precedential nature involving a new or unreviewed policy consideration that may have effects beyond the actual case at hand, or is otherwise of such an exceptional nature as to merit the personal attention of the Commissioners.
   (b) An agency request for reopening under paragraph (a) of this section shall not stay the corrective action recommended by the Board of Appeals and Review, but the immediate action in such a case may be by temporary appointment, temporary promotion, or temporary restoration to duty status to a position of like grade and pay pending final disposition of the case.

tiff failed to complete his probationary period, he was not covered by the protection of the Veterans' Preference Act. Thus the *Feldman* and *Goodwin* cases are inapplicable to this case. The court is consequently unable to find any reason why the Commissioners should be prohibited from reopening the Board decision of October 10, 1972.

*The Propriety of Plaintiff's Termination.* The last set of arguments we address is plaintiff's contention that his termination was substantively improper (i. e., he was terminated for filing a grievance) and accomplished in violation of certain procedural requirements. For guidance as to the substantive and procedural rights of probationary employees we look to *Perlongo v. United States*, 215 Ct.Cl. 982, 566 F.2d 1192 (1977), *cert. denied*, 436 U.S. 944, 98 S.Ct. 2844, 56 L.Ed.2d 784 (1978), where the court stated:

> The rights conferred by Civil Service Commission regulations are very narrow. Procedurally, a probationary employee has the right only to be notified prior to termination of his employment as to the agency's "conclusions as to the inadequacies of [the probationer's] performance or conduct." 5 C.F.R. § 315.804 (1975); *Horne v. United States*, 190 Ct.Cl. 145, 148, 419 F.2d 416, 418 (1969). Substantively, the only limitation on an agency's power to dismiss a probationary employee is that the agency must honestly be dissatisfied with the probationer's conduct or performance after giving him a fair trial on the job. *Horne v. United States, supra* at 150, 419 F.2d at 419; *Dargo v. United States* 176 Ct.Cl. 1193, 1206 (1966).
> [*Id.* at 983]

As a *substantive* point plaintiff contends he was actually terminated in reprisal for filing a grievance on December 27, 1971. Plaintiff relies on his termination effected January 2, 1972, as *prima facie* evidence of his reprisal charge. The agency has flatly denied the accusation.

■■ Generally speaking, a fairly high standard of proof is required to sustain a claim of bad faith conduct on the part of Government agents, *see Grover v. United States*, 200 Ct.Cl. 337, 343 (1973), and Governments officials are presumed to act in good faith. *Id.* A compelling reason existed independent of plaintiff's grievance for the timing of his termination, that is, so it could be accomplished before the end of his probationary period. Were we to conclude plaintiff's termination as a probationary employee in the final days of his probationary period *alone* constituted a wrongful reprisal, it would be a simple matter for any probationary employee to thwart termination by filing a grievance shortly before the time when such an employee is most liable to termination—just before the end of the probationary term. Putting the matter more directly, there is insufficient evidence of reprisal in this case. HUD enumerated sound reasons for plaintiff's termination. Plaintiff has failed to present a substantial justification for overturning the action. *See Perlongo v. United States*, 215 Ct.Cl. 982, 566 F.2d 1192 (1977), *cert. denied*, 436 U.S. 944, 98 S.Ct. 2844, 56 L.Ed.2d 784 (1978).

■ Plaintiff's three major *procedural* arguments are that (1) he did not receive his termination notice prior to the end of his probationary period; (2) he was denied sick leave to which he was entitled by his wrongful termination while on sick leave; (3) the effective date on his termination notice was improperly changed by Mrs. Franceschini from January 3, 1972 to January 2, 1972. These contentions are judged against the standard that, "Procedurally, a probationary employee has the right only to be notified prior to termination of his employment as to the agency's 'conclusions as to the inadequacies of [the probationer's] performance or conduct.'" *Perlongo*, 215 Ct.Cl. at 983, 566 F.2d 1192. The Commissioners in their decision of March 27, 1973, rejected plaintiff's argument of untimely service and we find no reason to disturb their conclusion. The Commissioners determined that HUD's efforts to serve plaintiff his termination notice even though the written notice did not actually reach plaintiff until after his termination date, were sufficient to constitute constructive delivery. Their decision states:

The regulations do not require that the Notice of Termination actually be delivered, regardless of cost or circumstances. Nor do they require that all efforts to effect delivery must be made. Again, the regulations require only that "an intelligent and diligent effort" be made in the circumstances.

We agree with the Commissioners that HUD's actions to serve plaintiff his notice were all that could be reasonably expected under the circumstances. Several copies of the notice were sent to plaintiff's home, one was delivered personally by a HUD employee and slipped under plaintiff's front door. When it was discovered that plaintiff was hospitalized, a telegram with the contents of the notice was sent to him there. Moreover, plaintiff was verbally notified of his imminent termination by Frank Cerabone on Wednesday, December 29, 1971, before he drove thirty miles to the hospital. He had every reason to expect a notice would soon be delivered to him, yet curiously enough, he received none of the many notices sent until the day after his discharge from the hospital. In view of these circumstances we conclude that constructive delivery of the termination notice was accomplished before the effective date of plaintiff's termination of January 2, 1972.

■ The Commissioners similarly considered and rejected plaintiff's contention that Mrs. Franceschini lacked authority to correct the termination date on plaintiff's notice. The Commissioners found that:

[T]he administrative personnel of the Buffalo Area Office were only doing, in the cited instance, one of the types of normal duties for which they are hired. As footnote to this, the Commissioners note that the cited change was approved by duly constituted higher authority within the agency.

Again, we discover no reason sufficient to overturn their conclusion on this point. The decision of the Commissioners stands.

■ Plaintiff's sick leave claim is based on the erroneous assumption that his sick leave status shielded him from an otherwise valid probationary termination. Plaintiff somewhat confusedly argues that since everyone has a right to sick leave no one can ever be terminated while on sick leave. Yet nothing in 5 U.S.C. § 6307 (1976), the sick leave provision, nor any other regulation within our knowledge, bars termination of a probationary employee while on sick leave. As of the time plaintiff's termination became effective, January 2, 1972, he was "off the rolls" regardless of whether he was using sick leave. His sick leave status simply could not and did not vitiate his termination.

■ Plaintiff also advances several other claims as to his alleged rights, all of which were either considered and rejected by the Commissioners or are beyond plaintiff's rights as a probationary employee. For example, plaintiff vigorously asserts his employment actually began on January 3, 1971. Were he correct, this could cause technical problems with the legality of his firing on January 2, 1972. The Commissioners carefully considered this issue and found plaintiff began employment on January 4, 1971, the date of his appointment evidenced in Standard Form 50, "Notice of Personnel Action." His probationary period, the Commissioners found "officially ended at 5:15 p. m. on January 3, 1972," but he had been effectively terminated midnight January 2, 1972, before the end of the probationary term. Our review of the details of this issue convinces us that the Commissioners were correct in their findings.

■ Plaintiff claims entitlement to notice of the quality of his performance sixty days before the end of his probationary period. But the regulation providing for such notice, Federal Personnel Manual, Chapter 315, subchapter 8–(3)(a)(5) demonstrates this notice is actually for purposes of *agency* evaluation of the probationary employee and specifically states failure to provide the notice will not be a bar to the probationer's termination during probation. The failure of plaintiff to receive this notice could not invalidate his termination.

Plaintiff's briefs in this case were relatively voluminous. This opinion addresses what the court perceives as the major arguments raised by plaintiff. Any remaining minor or lesser arguments do not merit further comment. The court has carefully examined each and every one of plaintiff's submissions and remains convinced plaintiff's termination was effected in compliance with all applicable procedural and substantive standards.

Accordingly, upon consideration of the parties' submissions and after oral argument, plaintiff's motion for summary judgment is denied. Defendant's cross-motion for summary judgment is granted and the petition is dismissed.