# United States Court of Appeals
# for the Federal Circuit

---

**SHA'LISA LEWIS,**
*Petitioner*

**v.**

**FEDERAL BUREAU OF PRISONS,**
*Respondent*

---

2023-2015

---

Petition for review of an arbitrator's decision in No. FMCS 220523-06204 by Linda Eberenz.

---

Decided: March 4, 2024

---

SHA'LISA LEWIS, Mebane, NC, pro se.

MEREDYTH COHEN HAVASY, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, DC, for respondent. Also represented by BRIAN M. BOYNTON, ELIZABETH MARIE HOSFORD, PATRICIA M. MCCARTHY.

---

Before DYK and CUNNINGHAM, *Circuit Judges*, and
BENCIVENGO, *District Judge.*[1]

DYK, *Circuit Judge.*

Petitioner Sha'Lisa Lewis seeks review of an arbitrator's decision finding that the Federal Bureau of Prisons ("BOP") properly terminated Ms. Lewis's employment during her probationary period. Ms. Lewis argues primarily that she did not receive notification of her termination until after the completion of her probationary period and that the arbitrator ignored 5 C.F.R. § 315.804, which Ms. Lewis contends provides that an employee is not terminated until she receives such notice. We conclude that the regulation only requires that the agency make reasonable efforts to inform the employee of the termination and the reasons for it prior to the end of the probationary period. The government unquestionably made such reasonable efforts here. We affirm.

## BACKGROUND

Under 5 U.S.C. § 7513, federal employees facing removal are normally entitled to advance written notice and procedural protections, including the right to appeal to the Merit Systems Protection Board ("MSPB"). However, these provisions are inapplicable to individuals serving a probationary period under an initial appointment. 5 U.S.C. § 7511(a)(1)(A)(i). The question here is whether Ms. Lewis was terminated during her probationary period.

In April 2021, BOP hired Ms. Lewis as a correctional officer at the Federal Correctional Complex in Butner, North Carolina. Ms. Lewis's appointment was subject to completion of a one-year probationary period, which the

---

[1]    Honorable Cathy Ann Bencivengo, District Judge, United States District Court for the Southern District of California, sitting by designation.

parties agree ended at 4:00 pm on April 8, 2022. On March 30, 2022, shortly before the end of her probationary period, Ms. Lewis was "placed on administrative leave with pay until further notice." S.A. 6. During administrative leave, Ms. Lewis was "subject to recall to duty at any time" and was required to provide a "telephone number where [she could] be reached at all times during normal duty hours." *Id.*

On April 6, 2022, BOP prepared a termination letter to Ms. Lewis providing "notice that [Ms. Lewis] will be removed during probation from [her] position of Correctional Officer" as of the end of the day on April 6, 2022. S.A. 9. The letter explained that "[t]his action is being taken because of [Ms. Lewis's] unsatisfactory conduct since entering on duty April 11, 2021." *Id.* The termination letter named one charge—"Appearance of an Inappropriate Relationship with an Inmate"—and described two instances wherein Ms. Lewis purportedly allowed an inmate to enter the officer's station with her while "the lights were off" on March 4, 2022, and March 5, 2022. *Id.* Although Ms. Lewis contended at arbitration that these allegations were false, the termination letter states that Ms. Lewis had admitted these events occurred and that they "support[] someone else's perception of an inappropriate relationship." *Id.*

BOP "attempted to inform Ms. Lewis of their decision to terminate her." S.A. 2. First, on April 5, 2022, BOP directed Ms. Lewis to report to the facility the next day, which a BOP witness testified was for Ms. Lewis "[t]o receive the termination letter." S.A. 28 (24:21). But "Ms. Lewis failed to report as instructed, alleging illness." S.A. 2. The record contains a note from a nurse practitioner stating that Ms. Lewis was seen at a clinic at 3:15 pm on April 5, 2022—the day she received her instruction to report to the institution. The note requested that Ms. Lewis be excused from work until April 9, 2022—the day after her probationary period would end.

When Ms. Lewis did not report to the facility on April 6, 2022, BOP "mailed a copy of the termination letter to [Ms. Lewis's] address of record via USPS Certified Mail and overnight mail via FedE[x]." *Id.* Ms. Lewis contends that she only received the letter on April 12, 2022, after the end of the probationary period. According to FedEx tracking information, "the letter had been delivered on Thursday, April 7, 2022, at 9:59 am," before the end of the probationary period. *Id.* Ms. Lewis contended that she never received the FedEx package, and that the signature on the receipt is not hers. As to the certified mail copy, a delivery slip indicates that USPS unsuccessfully attempted to deliver it on April 8, 2022. In addition, on April 8, 2022, the human resources manager called Ms. Lewis and, when Ms. Lewis did not answer, left a voicemail referencing "the removal letter from employment here at FCC Butner." S.A. 18. Ms. Lewis contended she did not receive the message until after her probationary period ended at 4:00 pm, and the time stamp on the voicemail exhibit is 4:05 pm, but the human resources manager testified that she had called and left the message before 3:00 pm.

On April 20, 2022, the American Federation of Government Employees Local 408 ("the union") "presented a formal grievance claiming that bargaining unit employee, Sha'Lisa Lewis had been removed from her position without due process required by the Master Agreement, applicable statute, and government regulations." S.A. 1. After BOP denied the grievance, the union requested arbitration. On January 26, 2023, an in-person arbitration hearing was held, during which a lawyer appeared on behalf of the union, four witnesses—including Ms. Lewis and a union vice president—testified under oath, and twenty-five exhibits were presented. The parties submitted post-hearing briefs.

On April 26, 2023, the arbitrator rendered her decision, finding that "Ms. Sha'Lisa Lewis was terminated during her probationary period and was not entitled to advanced notice or other due process procedures as the Union claims.

The termination is not grievable." S.A. 3. The arbitrator held that probationary employees "are to be informed, in writing, of the reasons for the termination but there is nothing requiring that this information be provided prior to termination." S.A. 2. The arbitrator did not resolve whether Ms. Lewis had received notice before the probationary period ended. Ms. Lewis timely petitioned for review, arguing that the arbitrator erred in finding that Ms. Lewis was terminated before the end of her probationary period. Thus, Ms. Lewis contends, she was denied "due process protections, such as a proposed removal action, and . . . a reasonable opportunity to respond." Pet. Br. at 4.

We have jurisdiction to review the arbitrator's decision under 5 U.S.C. §§ 7121(f) and 7703(b)(1) and 28 U.S.C. § 1295(a)(9). *See Buffkin v. Dep't of Def.*, 957 F.3d 1327, 1329 (Fed. Cir. 2020).

## DISCUSSION

"Under 5 U.S.C. § 7121(e)(1) . . . a federal employee seeking to challenge disciplinary action by her employing agency may appeal her claim to the MSPB or, alternatively, take her claim to an arbitrator under a negotiated grievance procedure created by collective bargaining agreement." *Id.* We review the arbitrator's award "using the same standard of review that applies to appeals from decisions of the MSPB." *Id.* (citing 5 U.S.C. § 7121(f)). Under that standard, we review the record and must "hold unlawful and set aside any agency action, findings, or conclusions found to be (1) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law; (2) obtained without procedures required by law, rule, or regulation having been followed; or (3) unsupported by substantial evidence." 5 U.S.C. § 7703(c).

Ms. Lewis primarily argues that the arbitrator misapplied 5 C.F.R. § 315.804(a), which provides (emphasis added):

> [W]hen an agency decides to terminate an employee serving a probationary or trial period because his work performance or conduct during this period fails to demonstrate his fitness or his qualifications for continued employment, <u>it shall terminate his services by notifying him in writing</u> as to why he is being separated and the effective date of the action.

Ms. Lewis contends that her termination was not effective because she did not receive the notice of termination before the end of the probationary period and that the arbitrator erred in determining that such notice was not required.

The regulation requires that termination be accomplished "by notifying [the employee] in writing." 5 C.F.R. § 315.804(a). An agency cannot rely only upon an internal decision to terminate a probationary employee without notifying the employee before the end of the probationary period. However, the regulation does not require that the employee actually receive the notice before the end of the probationary period, as Ms. Lewis contends. Rather, a termination is effective if the agency does "all that could be reasonably expected under the circumstances" to timely deliver the notice. *Shaw v. United States*, 622 F.2d 520, 528 (Ct. Cl. 1980).[2]

---

[2]    The events in *Shaw* predated the enactment of the Civil Service Reform Act of 1978 ("CSRA"), Pub. L. No. 95-454, 92 Stat. 1111 *et seq.* While the CSRA "comprehensively overhauled the civil service system," *Lindahl v. Office of Personnel Management*, 470 U.S. 768, 773 (1985), the regulation at issue here is identical in relevant part to the regulation that was at issue in *Shaw*. *Compare* 5 C.F.R. § 315.804(a) (2008) (agency "shall terminate his services by notifying him in writing"), *with* 5 C.F.R. § 315.804 (1972) (same). Therefore, *Shaw* is relevant precedent.

In *Shaw*, the plaintiff contended that he did not receive actual notice of his termination until after his probationary period ended, but the agency had sent several copies of the notice to the plaintiff's home, sent a telegram with the notice's contents to a hospital where the plaintiff was being treated, and orally notified the plaintiff of his imminent termination. *Id.* The court held that these efforts were sufficient. *Id.* This makes eminent sense in terms of the purpose of the regulation. If timely actual notice was required, a probationary employee could simply evade notice and preclude termination. *Shaw*'s approach is also consistent with the "very narrow" protections provided to probationary employees. *Id.* at 527 (quoting *Perlongo v. United States*, 215 Ct. Cl. 982, 983 (1977)).

Ms. Lewis argues that the arbitrator did not make a finding regarding whether BOP was reasonable or diligent in attempting to provide notice. We may affirm a judgment "on any ground supported by the record, whether or not that basis was given by the court," and we exercise our discretion to do so here. *El-Sheikh v. United States*, 177 F.3d 1321, 1326 (Fed. Cir. 1999). It is undisputed that BOP placed Ms. Lewis on administrative leave and then instructed her to report to the facility days before the end of her probationary period (with the intention of giving her the termination notice), and that she did not report as instructed; that BOP sent multiple copies of the notice to her home address (designed to arrive before the probationary period ended); that BOP called Ms. Lewis on the last day of the probationary period to inform her of her termination orally; and that before the end of the period BOP attempted to leave a voicemail referencing the termination. Based on this record, we think that no reasonable arbitrator could find that BOP's efforts were not reasonable under the circumstances or that BOP's efforts were inconsistent with the regulation.

CONCLUSION

Because BOP's efforts to notify Ms. Lewis of the information required by 5 C.F.R. § 315.804 before the end of the probationary period were reasonable under the circumstances, BOP complied with the regulation. Ms. Lewis was effectively terminated as a probationary-period employee.

**AFFIRMED**

COSTS

No costs.