**Robert E. HEAPHY, Plaintiff,**

v.

**UNITED STATES TREASURY DEPARTMENT, BUREAU OF CUSTOMS, Defendant.**

No. 72 Civ. 747.

United States District Court,
S. D. New York.

Jan. 29, 1973.

Robert E. Heaphy, pro se.

Whitney N. Seymour, Jr., U. S. Atty. for the S. D. N. Y., by, Taggart D. Adams, Asst. U. S. Atty., for defendant.

## OPINION

TYLER, District Judge.

Plaintiff in this *pro se* action seeks reinstatement to his former position as probationary Customs Inspector with the defendant, United States Treasury Department, Bureau of Customs, or, in the alternative, a hearing on the matter of his discharge from such employment. It appears that plaintiff commenced his job as a probationary Customs Inspector on or about March 21, 1971, and was notified by letter dated June 18, 1971 that he would be dismissed. The complaint, filed February 23, 1972, asserts that "[p]laintiff's dismissal was based on the prejudicial disposition of and the active dislike by his immediate superior. . . ." In addition to challenging the reasons provided for plaintiff's discharge, the complaint alleges that government-provided counsel "failed to advise plaintiff properly" in taking his administrative appeal, and that consequently his appeal "was severely limited". The result was that plaintiff was discharged without a hearing on the "questions of good faith of his superior or any question of his ability to perform"; as the complaint recites, "[t]his dismissal under a cloud of incompetency has severely damaged plaintiff's working and employment record and may hamper him in the pursuit of a professional carrier [sic] . . . ."

The government moved to dismiss the complaint, pursuant to Rules 12(b)(6) and (7), F.R.Civ.P., on July 18, 1972; by stipulation of the parties, plaintiff's time to respond was extended to October 6, 1972. Since the government submit-

ted the administrative record along with its affidavit in support of the motion, this court indicated by way of a memorandum dated December 4, 1972 that it would treat the government's motion as one for summary judgment under Rule 56, and invited the parties to submit any additional material they desired.

The essential facts underlying the controversy are not disputed; rather, it is the characterization of these facts, and the proper role of this court, that form the basis of the action. By letter dated June 18, 1971, plaintiff was notified of the decision of G. R. Dickerson, Acting Regional Commissioner of the Department of the Treasury, Bureau of Customs, that plaintiff's probationary appointment to the Customs Service would be terminated on June 25th. This letter, set out in substantial part in the margin,[1] cited three separate incidents as the basis for the termination: criticism for "improper and lengthy examination of baggage" and for "general attitude and behavior" by Supervisory Customs Inspector L. Simon on April 21, 1971; absence without leave on the day of May 3, 1971; failure to report on the morning of May 5, 1971. The letter

further indicated that plaintiff would have 15 days after discharge to appeal, that his grounds for appeal would be limited essentially to charges of discrimination, and that further advice on processing the appeal could be obtained from a Supervisory Employee Relations Specialist.

Plaintiff appealed his discharge, alleging arbitrary and capricious action and discrimination because of his age. By letter of July 20, 1971, the New York Regional Office of the U.S. Civil Service Commission ruled that there was no basis for an appeal and that plaintiff had failed to make any specific showing of actual discrimination. It was further ruled that in the absence of any discrimination, the Civil Service Regulations otherwise precluded the Commission from inquiring into the sufficiency of reasons given for dismissal due to an employee's performance. On final appeal, the Board of Appeals and Review upheld the decision of the Regional Office.

In his complaint and affidavit, plaintiff does not press his claim of discrimination but again seeks to challenge the sufficiency of the reasons given for his

RIDER

1. "Dear Mr. Heaphy:

This letter constitutes a notice to you that you will be separated from the Customs Service on June 25, 1971, in accordance with Part 315 of the Civil Service regulations for disqualification during your probationary period for the following reasons:

On March 21, 1971, you were appointed as a Customs Inspector, GS–7, and assigned to the Inspection and Control Section, Baggage Unit, J. F. K. Airport.

On April 21, 1971, it was necessary for Supervisory Customs Inspector L. Simon to counsel you concerning improper and lengthy examination of baggage, and your general attitude and behavior.

On May 3, 1971, at 9:40 A.M., you were ordered by Supervisory Customs Inspector T. Clarke, to report to the office of Mr. C. W. Waters, Head, Cargo Unit, at Cargo Building #80. You were to assist in the Merchandise Quantity Control Program. You reported to Mr. Waters' office at 10:30 A.M. and were assigned to the TWA Cargo Room. However, you

did not report to your assignment, left the airport and drove home without notifying your superiors or requesting leave. Therefore, you were absent without leave from 10:30 A.M. until 5:00 P.M.

On May 4, 1971, you were assigned to report to the National Training School at Hofstra University. Although you reported for training on that date, you failed to report on the morning of May 5, 1971. Neither did you immediately inform the instructor of your absence.

Probation is an integral part of the Civil Service competitive process. Its purpose is to afford the new appointee in Federal Service an opportunity not only to demonstrate his capability to perform the duties of the position to which appointed, but also to demonstrate those personal qualities of dependability that would warrant retention in the Service beyond probation. Because of the above mentioned reasons, it has been decided that you have failed to merit retention in the Service. Accordingly, I have decided to terminate your probationary appointment . . . .".

termination. He asserts, *inter alia*, that the baggage inspection incident of April 21 was not really his fault, that he was proceeding in good faith, and that he was "inexperienced as to specific policy." He asserts, moreover, that the actions of his superior were motivated by an active dislike for plaintiff. He alleges that his absence of May 3rd was caused by serious illness which arose after he reported for work, and that he was unable to communicate with his superiors until after he returned to work. He denies that he was absent from work on the morning of May 5th, but asserts rather that he arrived late that morning and subsequently informed his superior of his presence.

The crux of the complaint, it would seem, is that plaintiff was deprived of his federal probationary employment because of arbitrary and capricious action by one of his superiors, and that he was denied the opportunity to refute or at least explain the reasons given for his termination. This, it is argued, constitutes a denial of due process. However sympathetic one might be towards the plight of the plaintiff, the record in this action does not establish that plaintiff was in fact denied due process, nor that his discharge was the product of arbitrary and capricious executive action. Therefore, this court can find no justification for injecting itself into the delicate area of executive discretion.

■ At the start, it must be noted that the federal government has the right, subject to certain limitations, to summarily discharge its employees. Cafeteria & Restaurant Workers Union v. McElroy, 367 U.S. 886, 81 S.Ct. 1743, 6 L.Ed.2d 1230 (1961). As the Ninth Circuit remarked in a context very similar to that at bar,

> "Dismissal from federal employment is largely a matter of executive agency discretion. Particularly is this true during the probationary period. The scope of judicial review is narrow. Assuming that statutory procedures meet constitutional requirements, the court is limited to a determination of whether the agency substantially complied with its statutory and regulatory procedures, whether its factual determinations were supported by substantial evidence, and whether its action was arbitrary, capricious or an abuse of discretion." Toohey v. Nitze, 429 F.2d 1332, 1334 (9th Cir. 1970).

■ As the record indicates, there is no serious evidentiary issue; that the incidents cited as reasons for dismissal occurred is not contested, but rather their characterization and the lack of opportunity for plaintiff to give his version of events. Moreover, it does not appear from the record that the defendant agency failed to comply with normal procedures. The federal regulations relevant to this controversy are 5 C.F.R. §§ 315.804 and 315.806, and are set out in the margin.[2] No hearing prior or even

2. § 315.804 Termination of probationers for unsatisfactory performance or conduct:

When an agency decides to terminate an employee serving a probationary or trial period because his work performance or conduct during this period fails to demonstrate his fitness or his qualifications for continued employment, it shall terminate his services by notifying him in writing as to why he is being separated and the effective date of the action. The information as to why the employee is being terminated shall, as a minimum, consist of the agency's conclusions as to the inadequacies of his performance or conduct.

§ 315.806 Appeal rights to the Commission.

(a) Right of appeal. An employee may appeal to the Commission in writing an agency's decision to terminate him under § 315.804 or § 315.805 only as provided in paragraphs (b) and (c) of this section. The Commission's review is confined to the issues stated in paragraphs (b) and (c) of this section.

(b) On discrimination. (1) An employee may appeal under this subparagraph a termination which he alleges was based on discrimination because of race, color, religion, sex, or national origin

. . .

subsequent to discharge is required, absent political or other discrimination; the administrative agency is required solely to notify the probationer as to his termination and the reasons therefor. It cannot be seriously argued that this regulatory scheme is facially defective in failing to provide a hearing in such a case: "Congress has not provided for a hearing in cases like the one before us, and in the view of this Court there are no compelling reasons for imposing a constitutional requirement of a hearing prior to the dismissal of probationary employees." Jaeger v. Freeman, 410 F. 2d 528, 531 (5th Cir. 1969).

■ Nor has plaintiff established any particular claim in this instance to a deprivation of liberty or property within the Fifth Amendment, which would require the provision of a hearing. As the Supreme Court recently elucidated, albeit in a state employment context,

> "To have a property interest in a benefit, a person clearly must have more than an abstract need or desire for it. He must have more than a unilateral expectation of it. He must, instead, have a legitimate claim of entitlement to it." Board of Regents v. Roth, 408 U.S. 564, 577, 92 S.Ct. 2701, 2709, 33 L.Ed.2d 548 (1972).

In the instant case, plaintiff was admittedly a probationary employee; he has not asserted any contract or other mutual understanding or rule that would rise to such a claim of entitlement.

On the other hand, plaintiff asserts in his complaint that "his dismissal under a cloud of incompetency has severely damaged plaintiff's working and employment record and may hamper him in the pursuit of a professional carrier [sic] . . . .." In his affidavit, sworn to the 14th day of December, 1972, plaintiff alleges that he was unemployed from the date of discharge until May, 1972; that if he passes the New York State Bar Examinations, he will be unable to obtain a good character report from his employer; and that his discharge "will make it extremely difficult if not impossible to get hired in a similar law enforcement position or as a government attorney or otherwise." More specifically, he adds: "Since my discharge, I have inquired about and applied to numerous government and law enforcement positions. *Several* of these rejected me." [emphasis added]. Finally, however, the affidavit indicates that plaintiff is presently employed in some unspecified position.

Judging from the nature of the reasons advanced in the letter of termination, and from the facts set out above, it is difficult to say that plaintiff has been so "stigmatized" or disabled by his discharge that a hearing is required to give him the opportunity to clear his name. See Board of Regents v. Roth, *supra*. "Mere proof, for example, that his record of nonretention in one job, taken alone, might make him somewhat less attractive to some other employers would hardly establish the kind of foreclosure of opportunities amounting to a deprivation of 'liberty.'" *Ibid.*, 408 U.S. at 574, n. 13, 92 S.Ct. at 2708. There is no indication in the record that plaintiff's eleven month period of unemployment was due solely to his discharge; for aught that appears, this unemployment might have been due to the fact that plaintiff was in law school at the time. Moreover, the fact that plaintiff was reprimanded for certain conduct on one occasion—even if the reprimand were unwarranted—and his leave without absence do not seem to be of such gravity as to jeopardize his integrity, or significantly restrict his liberty under the

(2) An employee may appeal under this subparagraph a termination not required by statute which he alleges was based on political reasons or marital status or a termination which he alleges resulted from improper discrimination because of physical handicap.

teaching of *Roth*. See, also, Russell v. v. Hodges, 470 F.2d 212 (2d Cir. 1972); Tichon v. Harder, 438 F.2d 1396, 1402 (2d Cir. 1971). ("Although every dismissal for reasons other than reduction in the work force can be said to have some impact on future employability, . . ., in the absence of a clear, immediate and substantial impact on the employee's reputation which effectively destroys his ability to engage in his occupation, it cannot be said that a right of personal liberty is involved.")

But emphasis on property or liberty may work a disservice to plaintiff's case. Even in the absence of any "right" to continued public employment, surely an individual may be protected against injury by governmental action which is "patently arbitrary or discriminatory." Wieman v. Updegraff, 344 U.S. 183, 192, 73 S.Ct. 215, 97 L.Ed. 216 (1952); Cafeteria & Restaurant Workers Union v. McElroy, *supra*, 367 U.S. at 898, 81 S. Ct. 1743. Moreover, 5 U.S.C. §§ 704 and 706 provide for judicial review of final agency action, and mandate reversal of such action where it is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law."[3]

The problem, as I see it, lies in the definition of "arbitrary and capricious" agency action, given the policy underpinnings of executive discretion and narrow judicial review. The standard utilized by the Supreme Court in Cafeteria & Restaurant Workers Union v. McElroy, *supra*, was whether the "reason advanced" for the discharge of the employee was "entirely rational." 367 U.S. at 898, 81 S.Ct. 1743. Perhaps a better characterization of the scope of review is that found in Horne v. United States, 190 Ct.Cl. 145, 419 F.2d 416, 419 (1969), involving the discharge of a probationary I.R.S. employee for uncooperative behavior: "Considering the strong presumption that public officials act in good faith, an employee carries a heavy burden in attempting to show, in cases of this kind, that his discharge was so lacking in rational support that it must be characterized as arbitrary or capricious."

As noted, plaintiff does not contest that he was absent without leave on May 3, 1971; he states that he arrived at work sometime after 11 A.M. on May 5, 1971, rather than failing to report for work on that morning; and he does not contest that there was an "incident" involving the inspection of certain baggage, which resulted in a reprimand by Supervisory Customs Inspector Simon on April 21, 1971. Rather, he seems to contend that the reprimand and subsequent report by Mr. Simon were motivated by animus and were unwarranted. And he seeks to demonstrate this animus by relating two other incidents: once when he was a few minutes late in arriving at his post, due to a discussion with a staff officer, he received a rebuke from Simon, although he contends that other inspectors were not yet at their posts; plaintiff in his affidavit asserts, secondly, that an unknown Customs Security Officer approached him and informed him that Mr. Simon ". . . said to one of the other bosses, 'I got to get rid of that kid!'" These recited incidents are said to dem-

---

3. § 704
    "Agency action made reviewable by statute and final agency action for which there is no other adequate remedy in a court are subject to judicial review . . .
        § 706 . . .
    To the extent necessary to decision and when presented, the reviewing court shall decide all relevant questions of law, interpret constitutional and statutory provisions, and determine the meaning or applicability of the terms of an agency action. The reviewing court shall—
        (1) . . .
        (2) hold unlawful and set aside agency action, findings, and conclusions found to be—
        (A) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law; . . . ."

onstrate the "malice" of Mr. Simon. While malicious removal from office in itself could be considered arbitrary or capricious, it should be noted that it was not Mr. Simon, but Acting Regional Director Dickerson who dismissed plaintiff. In sum, plaintiff has shown no substantial malice of his superior leading to dismissal. Even if such malice could indeed be inferred, moreover, it is apparent that these incidents relate to the work performance of plaintiff. Although this court might have reacted differently, it is not appropriate merely to substitute judicial "wisdom" for that of the administrator in whom discretion is Congressionally vested. Once it appears that the reasons given for discharge are work related, and that there is a rational relation between the discharge and these reasons, it cannot seriously be disputed that the discharge is "arbitrary or capricious." Views may differ as to the sufficiency of the reasons, or the motivations underlying the action, but this is precisely that area of administration which is committed to agency discretion.

Plaintiff, therefore, has not met his burden of demonstrating that his discharge, upon the order of G. R. Dickerson, Acting Regional Commissioner of the Department of the Treasury, Bureau of Customs, was so lacking in rational basis as to constitute arbitrary and capricious action. Nor has plaintiff successfully established any factual issue as to any deprivation of property or liberty resulting from his discharge as to warrant a hearing. As noted in this court's memorandum of December 4, on a motion for summary judgment, a "difference of opinion" among the parties is insufficient: "the rule requires that the opposing party present some evidence which supports the bald assertion that there is a dispute." Donnelly v. Guion, 467 F.2d 290 (2d Cir. 1972).

The government's motion for summary judgment is therefore granted and this action is dismissed. Settle order and judgment accordingly.