**Dario P. BIAGIOLI, Plaintiff,**

v.

**The UNITED STATES, Defendant.**

No. 432–82C.

United States Claims Court.

April 18, 1983.

As Amended May 4, 1983.

William C. Newman, Northampton, Mass., for plaintiff. Marla Ruth Allisan, Lesser, Newman, Souweine & Nasser, Northampton, Mass., of counsel.

Beacham O. Brooker, Jr., Washington, D.C., with whom was Asst. Atty. Gen. J. Paul McGrath, Washington, D.C., for defendant.

## OPINION

NETTESHEIM, Judge.

Defendant has moved for summary judgment over plaintiff's opposition.

## FACTS

In stating the operative facts, the court draws heavily on plaintiff's affidavit executed on January 30, 1983, and has accorded plaintiff's factual contentions the most favorable reading the record can support. Plaintiff, an electrical engineer, with over 17 years' experience, including eleven months'[1] prior federal service and a five-point veteran's eligibility, was employed by Blount Brothers Corporation, of Des Moines, Iowa, as an electrical engineer in June 1975. In order to secure employment that did not involve travel, plaintiff applied to the federal Government for a job as an electrical engineer.

During August 1975, the Veterans Administration notified plaintiff that he was under consideration for the position of electrical engineer with the Northampton Veterans Administration Hospital in North-ampton, Massachusetts ("VA Hospital"). The position was to be filled by appointment from a register. Personal and telephone interviews followed with personnel of the VA Des Moines facility and the VA Hospital. Plaintiff was not advised at any time before accepting employment that the position would be subject to a probationary period, and plaintiff avers his understanding that the position was permanent.[2] Plaintiff is adamant that he would not have relocated his family, including four minor children, had he been informed that his employment was subject to a one-year probationary period. Plaintiff states that had he known of his probationary status, he would have negotiated with the VA Hospital to secure permanent status, or pursued other job opportunities, or declined the VA Hospital's offer.

Plaintiff began his career-conditional appointment with the VA Hospital as a GS–11 electrical engineer on October 28, 1975, and was separated on October 15, 1976, for failure to meet acceptable job performance standards. Plaintiff states that he per-

---

1. Although plaintiff's affidavit recites that he completed a full year of prior federal service (Affidavit of Dario P. Biagioli, ¶ 3 (Jan. 30, 1983)), defendant offered plaintiff's standard Form 50 Notification of Personnel Action and Resignation for that employment, which revealed that he served from February 15, 1951, through January 18, 1952—a period of eleven months. Because plaintiff does not dispute the accuracy of these records, his claim that the Veterans Administration could have credited him with the completion of one year in probationary status, 5 C.F.R. § 315.801(a)(2) (1976), and reinstated him as a permanent employee, 5 C.F.R. § 315.401 (1976), will not be considered further. In any event, plaintiff was appointed to the position, not reinstated. Plaintiff, moreover, does not dispute defendant's assertion that his veteran's preference fails to augment his creditable service or qualify him for permanent status. Counsel for plaintiff advised in oral argument that plaintiff's prior federal service and veteran's preference were factors relevant to plaintiff's equitable estoppel argument, i.e., that they bear on the reasonable expectation of an offer of permanent employment. See Biagioli Affidavit, ¶ 10.

Concomitant with oral argument on April 15, 1983, plaintiff filed motions for leave to file an amended complaint and an amended affidavit. The former was denied as untimely; the latter, also untimely, was allowed because the amended affidavit does not differ from the January 30, 1983 affidavit as to any material fact, and only supplements the earlier version. All references herein are to the January 30, 1983 affidavit.

2. While plaintiff claims in his affidavit that representations of permanent employment were express, as well as implied (Biagioli Affidavit, ¶ 18), his deposition in federal district court proceedings, see infra note 3, is to the contrary:

Q: Was there any mention as to the status of your position here?
A: No.
Q: As a former government employee, did you know that you begin every position as a probationary employee?
Mr. Newman: I object.
Witness: No.

\* \* \* \* \* \*

Q: ... Did you make any inquiry as to what your status was going to be?
Mr. Newman: I object.
Witness: No.

Deposition of Dario P. Biagioli, at 36–37 (Feb. 4, 1982). The conflict is resolved by the affidavit itself which specifies implied representations. Biagioli Affidavit, ¶¶ 8, 9, 12.

formed his work with the VA in a superior fashion: "I demonstrated thoroughness, confidence, initiative, skill and expertise. My demeanor and conduct were exemplary." However, he complains that he was frequently assigned to work as a construction foreman and architect, which was inappropriate to his job title, skills, and training. Since his termination, plaintiff claims that he has been unable to find equivalent employment.

Prior to plaintiff's separation, his supervisors afforded counseling sessions regarding his performance. On August 25, 1976, plaintiff was subjected to a certification by his supervisor that his performance was unsatisfactory. On September 28, 1976, a report recommending against a within-grade step increase indicated that plaintiff's work was not of an acceptable level of competence, and he was notified by letter dated September 30, 1976, that he would be terminated. The termination letter recited the following reasons for plaintiff's separation:

> [It is] based on your inability to carry out assigned duties as an Electrical Engineer at the Grade 11 level. You did not recognize the electrical sub-contractor's variance from drawings made in connection with electrical work on the Ward 3 elevator project. You were unable to write specifications or sketches for Ward 12 drawings, nor for the hold-open device for the fire door. You do not take initiative in carrying out projects to be accomplished as expected at your grade level.

Thereafter, in December 1976, plaintiff initiated a formal EEO complaint based on discrimination, the only ground available for a probationary employee to challenge dismissal under 5 C.F.R. § 315.806 (1976), other than an appeal based on improper procedure. A final agency decision in January 1978 sustained the termination. On February 14, 1979, plaintiff filed his com-

plaint in the Massachusetts federal district court,[3] but because plaintiff sought damages in excess of $10,000, the district court transferred the case to the Court of Claims by order of August 25, 1982. Plaintiff filed his complaint in this court on September 23, 1982, suing for back pay and reinstatement and claiming that his termination was arbitrary and capricious, was not based on legitimate employment criteria or objectives, and was otherwise unjust, contrary to 5 C.F.R. § 315.804 (1976). Violations of the fifth and fourteenth amendments to the U.S. Constitution were alleged.

On December 2, 1982, defendant moved for summary judgment, which plaintiff resisted in a brief filed on January 31, 1983. Thereafter, defendant replied on March 9, and oral argument, as requested by plaintiff, followed on April 15, 1983.

## DISCUSSION

### Jurisdiction

■ The initial hurdle in this case is jurisdictional. Plaintiff fails to allege jurisdiction in this court, and, as pointed out by Hon. Frank H. Freedman in his August 25, 1982 Memorandum incident to transferring plaintiff's case to the Court of Claims, the many other jurisdictional predicates advanced by plaintiff both in that court (and here)[4] do not intrude on the exclusive jurisdiction of this court's predecessor Court of Claims under the Tucker Act for claims in excess of $10,000. 28 U.S.C. § 1346(a)(2) (1976 & Supp. V 1981). The case was transferred on this basis, and this court acknowledges its jurisdiction to proceed to consider this claim based on infractions of applicable federal regulations and an asserted express or implied-in-fact contract. 28 U.S.C. § 1491(a)(1), *amended by* The Federal Courts Improvement Act of 1982, § 133(a), Pub.L. 97–164, 96 Stat. 25, 39. Any mone-

---

3. *Biagioli v. Cleland, et al.,* Civ.Act. No. 79–0310–F (D.Mass., filed Feb. 14, 1979).

4. 5 U.S.C. §§ 701–706 (1976) (judicial review of final agency action); 28 U.S.C. § 1361 (original jurisdiction in nature of mandamus to compel a U.S. officer or employee to perform a duty owed to plaintiff); 28 U.S.C. § 1331 (original jurisdiction based on Constitution or laws of United States with over $10,000 in issue); 28 U.S.C. § 1337 (original jurisdiction of civil action arising under an act of Congress regulating commerce); 28 U.S.C. §§ 2201–02 (the Declaratory Judgment Act).

tary award would be entered pursuant to the Back Pay Act. 5 U.S.C. § 5596 (1976 & Supp. V 1981).

However, Judge Freedman stated:

With regard to plaintiff's alternative claim for relief of a hearing comporting with due process, I find this is also a question for the Court of Claims. Although plaintiff's claim for injunctive and declaratory relief for alleged due process violations is within the jurisdiction of this court, pursuant to 28 U.S.C. § 1331, it is coupled with a claim for damages in excess of $10,000. By joining all claims, jurisdiction lies exclusively in the Court of Claims.

In transferring plaintiff's monetary, declaratory, injunctive, and constitutional claims, Judge Freedman relied on *Cook v. Arentzen,* 582 F.2d 870 (4th Cir.1978), which the Court of Claims criticized in *Smith v. United States,* 228 Ct.Cl. 168, 170, 654 F.2d 50, 51–52 (1981). The court held in *Smith* that plaintiff, who was denied conversion from temporary to permanent status as career Deputy United States Marshal, did not come within jurisdiction of the Court of Claims based on claims for monetary, declaratory, and injunctive relief and that the district court had improperly transferred the case believing that plaintiff's monetary and nonmonetary claims were not severable. Two factors, however, distinguish this case from *Smith.*

Plaintiff in *Smith* sought appointment to a position he had never held, rendering the Back Pay Act inapplicable. Plaintiff here asks for back pay and reinstatement to a position previously held, which ancilliary relief the Court of Claims has power to grant "as an incident to a money judgment." 228 Ct.Cl. at 170, 654 F.2d at 52. The Court of Claims in *Smith* was also concerned with "wasting the district court's efforts," 228 Ct.Cl. at 174, 654 F.2d at 54, by beginning anew in the Court of Claims after the federal court had considered the merits and issued a memorandum decision in the case.

Here, although a dispositive motion was filed, the court halted short of trial. Because *Smith* does not control in the present circumstances, the court will consider all of plaintiff's claims.

*Scope of Plaintiff's Claims*

Plaintiff advances two theories of recovery: wrongful termination of employment and equitable estoppel to enforce probationary status based on the failure timely to advise plaintiff that he was subject to a one-year probation. An alleged property or liberty interest appears to be an aspect of the latter theory. While the former theory is set forth as a cause of action in the complaint, the second emerged [5] in opposition to defendant's motion for summary judgment. Defendant did not request that the court decline to consider this claim, but responded on the merits, so the court will examine both theories.

*Promissory and Equitable Estoppel*

Plaintiff's second theory is first discussed. One issue is whether plaintiff makes out a claim for equitable estoppel or whether he actually is advancing a claim based on promissory estoppel.

*Jablon v. United States,* 657 F.2d 1064 (9th Cir.1981), holding that a physician who sought to enlist in the Air Force, but whose active duty orders were revoked, was not entitled to money damages based on promissory estoppel, because the United States has not waived its sovereign immunity with regard to promissory estoppel causes of action, sets out the difference between the two estoppel doctrines:

The difference between the doctrines can best be explained by observing that promissory estoppel is used to create a cause of action, whereas equitable estoppel is used to bar a party from raising a defense or objection it otherwise would have, or from instituting an action which it is entitled to institute. *Promissory estoppel is a sword, and equitable estoppel is a shield.*

657 F.2d at 1068 (emphasis added).

The Ninth Circuit further stated:

---

**5.** Paragraph 17 of plaintiff's complaint avers that "he had a legitimate expectation of permanent federal employment...." based on representations made to him at the time of hiring by the Veterans Administration and the VA Hospital.

Dr. Jablon's promissory estoppel theory is not included within the parameters of the Tucker Act because it is not an "express or implied-in-fact contract" theory.... Moreover, our *research reveals no cases construing the Tucker Act that have included awards based upon a promissory estoppel theory.* We therefore conclude that *the government has not waived its sovereign immunity with regard to a promissory estoppel cause of action.*

*Id.* at 1070 (emphasis added). The Court of Claims in *Radioptics, Inc. v. United States,* 223 Ct.Cl. 594, 624, 621 F.2d 1113, 1129 (1980) (per curiam), indicated the court's concern whether jurisdiction exists to consider a claim based on promissory estoppel.

■ Insofar as plaintiff is using estoppel to regain his employment based on a contract implied in law—arguing that he was offered a permanent position, as opposed to arguing that defendant is precluded from asserting the probationary period a bar to his claim—this case can be viewed as based on promissory estoppel. Chief Judge Kozinski remarked in a lawsuit brought by another probationary employee:

> [T]his is a court of very limited jurisdiction. Because all claims brought are against the United States and therefore involve a waiver of sovereign immunity ..., the court must exercise not only the traditional reluctance of federal courts to act absent specific statutory authorization..., but an additional measure of restraint growing from the principle that waivers of sovereign immunity must be narrowly construed.

*Connolly v. United States,* 1 Cl.Ct. 312 (1982) (citations omitted) affirmed in part and reversed in part, 716 F.2d 882 (Fed. Cir.1983). In these circumstances, the court will not broaden the waiver of sovereign immunity by allowing plaintiff to base his right to restoration of employment on promissory estoppel, to the extent his claim is so characterized.[6]

Assuming *arguendo,* however, that plaintiff's claim is based on equitable estoppel, the result does not change. Plaintiff relies on *Kaye v. United States,* 467 F.2d 415 (D.C.Cir.1972), where summary judgment was reversed and plaintiff allowed to develop the facts of his equitable estoppel cause of action. As here, plaintiff in *Kaye* was dealing with the Government; unlike the case at bar, the representations alleged in *Kaye,* if true, would not have amounted to a waiver of requirements imposed by federal regulations. In *Kaye* plaintiff relied on improper advice that his security clearance would be expedited. At least one other court has invoked the doctrine to prevent the Government from denying an employment relationship. *Beacom v. EEOC,* 500 F.Supp. 428 (D.Ariz.1980). This case is not binding; to the extent it is deemed persuasive, *see Greenberg v. United States,* 1 Cl.Ct. 406, 407 (1983) (KOZINSKI, C.J.), the decision is inconsistent with decisions of the Court of Claims which applied the doctrine of equitable estoppel stringently, charging knowledge of applicable statutes and other requirements to an entitlement. *E.g., Broad Avenue Laundry & Tailoring v. United States,* 231 Ct.Cl. ——, 681 F.2d 746 (1982); *Montilla v. United States,* 198 Ct.Cl. 48, 457 F.2d 978 (1972). Moreover, all of plaintiff's other cases that do not themselves distinguish his situation, *e.g., Sun Il Yoo v. INS,* 534 F.2d 1325 (9th Cir.1976), involved affirmative representations by the government officials sought to be charged, *e.g., Semaan v. Mumford,* 335 F.2d 704 (D.C.Cir.1964), or the failure to inform when the duty to do so was mandatory. *Corniel-Rodriguez v. INS,* 532 F.2d 301 (2d Cir.1976).

*Liberty Interest*

■ Although plaintiff refers to a "property right," in his complaint,[7] his brief *Connolly v. United States,* 554 F.Supp. at 1253 (citations omitted).

---

**6.** The facts of the case cannot support an implied-in-fact contract because "it is well established that the federal employment relationship is a statutory rather than contractual one...."

**7.** Complaint, ¶ 8.

alleges only a liberty interest. It is well-settled law that there is no property interest on the part of a probationary employee regarding his job. In *Fiorentino v. United States,* 221 Ct.Cl. 545, 607 F.2d 963 (1979), *cert. denied,* 444 U.S. 1083, 100 S.Ct. 1039, 62 L.Ed.2d 768 (1980), the Court of Claims held that an attorney, who was employed by HUD in the "excepted" service, indicted for submitting false travel vouchers, and removed without a hearing, had no property interest in his job. Lacking a property interest, the Court of Claims disclaimed jurisdiction of plaintiff's cause of action:

If the consent to be sued here ever included the back pay claim of one having no property interest in his job, and legally aggrieved solely because of derogatory material in government files generated by his firing, we think that consent is withdrawn by the Privacy Act of 1974, 5 U.S.C. § 552a. It provides an administrative remedy for one so aggrieved, and if he is unsuccessful with that, he can sue in the U.S. District Court, including a suit for correction of his record. 5 U.S.C. § 552a(g)(1).

221 Ct.Cl. at 555, 607 F.2d at 969.[8]

*Malicious and Arbitrary Termination*

Plaintiff's employment with the VA Hospital terminated pursuant to 5 C.F.R. § 315.804, which provides in full:

When an agency decides to terminate an employee serving a probationary or trial period because his work performance or conduct during this period fails to demonstrate his fitness or his qualifications for continued employment, it shall terminate his services by notifying him in writing as to why he is being separated and the effective date of the action. The information in the notice as to why the employee is being terminated shall, *as a minimum, consist of the agency's conclusions as to the inadequacies of his performance or conduct.*

(Emphasis added.)

■ The standards for judicial review of administrative action in civilian pay cases, and particularly those involving probation-

---

**8.** While one's reputation and good name are an element of the liberty interest in federal employment, *Wisconsin v. Constantineau,* 400 U.S. 433, 91 S.Ct. 507, 27 L.Ed.2d 515 (1971), any liberty interest is implicated only when "stigma or other disability that foreclose[s] his freedom to take advantage of other employment opportunities" attaches. *Board of Regents v. Roth,* 408 U.S. 564, 573, 92 S.Ct. 2701, 2707, 33 L.Ed.2d 548 (1972). The reasons given for plaintiff's dismissal do not state that he had been guilty of "dishonesty or immorality"—only that his job performance was unsatisfactory. "Mere proof . . . that his record of nonretention in one job, taken alone, might make him somewhat less attractive to some other employers would hardly establish the kind of foreclosure of opportunities amounting to a deprivation of 'liberty'." 408 U.S. at 574 & n. 13, 92 S.Ct. at 2707 & n. 13.

Thus, in order to invoke deprivation of due process with respect to a liberty interest, plaintiff "must establish that in the course of terminating his employment, the agency prepared a report, without giving him notice and an opportunity to be heard which was (a) false, (b) stigmatizing, and (c) published." *Huffstutler v. Bergland,* 607 F.2d 1090, 1092 (5th Cir.1979) (probationary employee who brought suit based on violation of first and fifth amendment rights denied relief as to liberty claims, because the lower court's conclusion was not clearly erroneous that the unsatisfactory rating for honesty was not stigmatizing). The two cases relied on by plaintiff to demonstrate triable factual issues on point are to the same effect. In *Churchwell v. United States,* 545 F.2d 59 (8th Cir.1976), the court emphasized that the case involved "*actual* disclosure of stigmatizing information." 545 F.2d at 62 (emphasis in original). A hearing was ordered because plaintiff, a registered nurse, was charged with misusing drugs on patients and possibly with lying to cover up her own misuse. *Casey v. Roudebush,* 395 F.Supp. 60, 63 (D.Md.1975), involved statements in his personnel file that plaintiff, a hospital police officer, was terminated for having been observed intoxicated and asleep on duty.

As stated in defendant's brief, the reasons for plaintiff's termination have not been made public. (Indeed, none of the rejection letters from prospective employers attached to his brief makes any reference to plaintiff's termination.) Based on the foregoing, assuming that plaintiff properly alleged jurisdiction on this claim, neither stigma nor publicity has been sufficiently delineated to withstand defendant's motion for summary judgment. RUSCC 56(e); *see Lehner v. United States,* 1 Cl.Ct. 408, 412–413 (1983) (NETTESHEIM, J.) (citing cases).

ary employees, were set forth recently in *Bowman v. United States,* 2 Cl.Ct. 146, 158–159 (1983) (YOCK, J.), and bear restatement only to emphasize the lack of procedural and substantive rights a terminated probationary employee can draw upon. Specifically, plaintiff is not entitled to a hearing before termination. *Shaw v. United States,* 223 Ct.Cl. 532, 543–44, 622 F.2d 520, 527, *cert. denied,* 449 U.S. 881, 101 S.Ct. 231, 66 L.Ed.2d 105, *reh'g denied,* 449 U.S. 987, 101 S.Ct. 410, 66 L.Ed.2d 252 (1980); *Perlongo v. United States,* 215 Ct.Cl. 982, 983, 566 F.2d 1192 (1977), *cert. denied,* 436 U.S. 944, 98 S.Ct. 2844, 56 L.Ed.2d 785 (1978); *Horne v. United States,* 190 Ct.Cl. 145, 148–49, 419 F.2d 416, 418 (1969) (*per curiam*). The employee's only substantive right is that the agency must honestly be dissatisfied with his performance after giving the probationer a fair trial on the job, *Shaw v. United States,* 223 Ct.Cl. at 544, 622 F.2d at 527; *Perlongo v. United States,* 215 Ct.Cl. at 983, 566 F.2d 1192, or that the agency's action in terminating him was not arbitrary or capricious. *Oppenheimer v. United States,* 197 Ct.Cl. 1064 (1972); *Horne v. United States,* 190 Ct.Cl. at 150, 419 F.2d at 419; *Dargo v. United States,* 176 Ct.Cl. 1193, 1199 (1966) (*per curiam*).

An impediment to summary disposition is that *Horne* and *Dargo* issued after trial as to whether the termination was undertaken in good faith in circumstances where the notices of termination, as here, gave reasons related to job performance.

■ Plaintiff does not dispute that he was advised of the VA Hospital's conclusions as to the inadequacies of his performance or conduct. Under the *Horne-Dargo* approach, he alleges that the reasons offered were so lacking in rational support that they must be characterized as arbitrary and capricious:

21. On information and belief, the allegations that my work in any capacity— including non-electrical engineer work— were completely pre-textural and entirely groundless.

22. On at least three occasions, even until the every end of my tenure with the Veterans Administration, there was no hesitancy whatsoever in appointing me acting Chief Engineer for the entire Veterans Administration Medical Center.

23. I was terminated within the year after beginning my employment with the Veterans Administration Hospital in Northampton, and this termination was not justified by my work performance. There is absolutely no rational support for my firing.

24. I believe that the Veterans Administration acted arbitrarily, capriciously and maliciously in terminating my employment as an electrical engineer with the Veterans Administration.

Biagioli Affidavit, ¶¶ 21–24.[9]

Plaintiff cites *Heaphy v. United States Treasury Department,* 354 F.Supp. 396 (S.D. N.Y.1973), involving a probationary federal employee who brought suit alleging that his dismissal was based on the "prejudicial disposition of and the active dislike by his immediate superior." In granting defendant's motion for summary judgment, the court held that the evidence was insufficient to show that plaintiff's discharge was so lacking in a rational basis as to constitute arbitrary and capricious action. *Heaphy* is relied upon for the proposition that malicious termination is not sanctioned by law. The court stated that "malicious removal... could be considered arbitrary or capricious ...." 354 F.Supp. at 402, but went on to say, "Even if such malice could indeed be inferred, moreover, it is apparent that these incidents relate to the work performance of plaintiff .... Views may differ as to the sufficiency of the reasons, or the motivations underlying the action, but this is precisely that area of administration

**9.** Plaintiff's supplemental affidavit, see *supra* note 1, added three additional paragraphs elaborating on these claims that the VA Hospital's motivations in terminating him were not work related, that he was given assignments and instructions calculated to create the appearance of an inability to meet job standards, and that his superiors made false representations concerning his work.

which is committed to agency discretion."
*Id.*

The Court of Claims reacted similarly in *Baginsky v. United States,* 221 Ct.Cl. 908 (1979), applying the arbitrary and capricious standard in entering partial summary judgment of dismissal where plaintiff alleged that the review board's action was tainted "by her supervisor's 'deep seated and irrational animosity towards plaintiff,' and that the board's action therefore lacked a rational basis." 221 Ct.Cl. at 912. *Compare Baginsky with Yoder v. United States,* 204 Ct.Cl. 931 (1974) (concurring op.) (trial ordered upon discharge of probationary employee for immoral conduct; "we are here not dealing with a situation in which plaintiff's *competence* to perform his assigned duties is in question." (emphasis in original).

The court concludes that under *Shaw* and *Perlongo* and later cases, which were decided on summary judgment, plaintiff's allegations must supply a substantial justification to overturn the agency determination, given that the VA Hospital set forth work-related reasons for the termination.[10] Recognizing that plaintiff diligently pursued over the years all available avenues of relief to vindicate what the record amply demonstrates plaintiff perceives was a wrong, the court, however, is constrained by applicable precedents to grant defendant's motion, because the factual charges said to preclude summary judgment do not satisfy the requisite standard of a substantial justification.

### CONCLUSION

Defendant's motion for summary judgment is granted, and the complaint will be dismissed.

IT IS SO ORDERED.

---

**10.** A comparison of plaintiff's job description with the reasons in the termination letter demonstrates the requisite relationship. Plaintiff's claim that he was only given his formal job description after eight months' employment (Biagioli Affidavit, ¶ 20) has been accepted by the court for purposes of this motion. *But see* Biagioli Dep. at 32–34.