**William James SCHUHL**

v.

**The UNITED STATES.**

**No. 136–83C.**

United States Claims Court.

Aug. 16, 1983.

William James Schuhl, pro se plaintiff.

---

Frances L. Nunn, Washington, D.C., with whom was Asst. Atty. Gen., J. Paul McGrath, Washington, D.C., for defendant.

## OPINION

REGINALD W. GIBSON, Judge:

This *pro se* case is presently before the court on defendant's motion to dismiss for failure to state a claim upon which relief can be granted. While not stated with specificity, plaintiff's petition purports to premise jurisdiction in this court under the Tucker Act, 28 U.S.C. § 1491.

The gravamen of plaintiff's claim is that, as a new federal employee, he is entitled to reimbursement for the expenses incurred in moving his household effects from San Antonio, Texas, to Washington, D.C., in January 1981, incident to his employment with the Department of Commerce commencing in November 1980. The acceptance of the government's offer in October 1980 by plaintiff was, allegedly, influenced by the defendant's representation that it would pay such relocation expenditures.

For the reasons delineated hereinafter, defendant's motion to dismiss is granted and plaintiff's petition is dismissed.

## FACTS

In September 1980, while a resident of San Antonio, Texas, plaintiff applied for employment with the U.S. Department of Commerce (Department) in Washington, D.C., and, as required, submitted the Standard Form 171 (job application). There followed communications with Mr. T. Zetty, Chief of the Department's Office of Administrative Services (OAS), and during a conversation with Mr. Zetty, plaintiff "inquired as to the possibilities of the Government paying for [his] relocation from his ... residence in ... Texas to the Washington, D.C. area." At that time, Mr. Zetty made

no commitment, and simply stated that, if plaintiff were offered a position, the inquiry "would be further investigated." Plaintiff's alleged response thereto was that:

"... acceptance of any job offer would be greatly influenced [by] the willingness of [the government] to pay for relocation of his household goods."

On October 24, 1980, plaintiff was telephonically advised by James Wohlgemuth, a Department Personnel Management Specialist, that his appointment with the Department as a Communications Specialist, GS–0393–11 in the OAS Transportation and Communication Division, had been confirmed. In response to plaintiff's inquiry whether the offer included reimbursement for expenditures incurred in relocating his household goods, Mr. Wohlgemuth advised that it did.[1]

Plaintiff verbally accepted the offer of employment, after being advised that it included reimbursement for relocation of his *household effects,* and requested confirmation of the foregoing from Mr. Wohlgemuth which was received by way of letter dated October 24, 1980, and contained the specific representation that:

"The movement of your household goods *has* been authorized; specific arrangements should be made through Mr. Thomas Zetty."[2]

On November 3, 1980, plaintiff reported for duty in the Department of Commerce, Washington, D.C., which was substantially prior in time to the movement of his household effects from Texas.

In a follow-up letter dated December 22, 1980, to Mr. Zetty, plaintiff reiterated his position respecting the acceptance of the Department's offer as follows:

"*I accepted* my current position as a Communications Specialist with the Department of Commerce *with the under-*

---

1. Plaintiff was also contacted prior to October 24, 1980, by a Mr. W. Hager, Administrative Officer for the Department's Office of Administrative Services, who allegedly "implied that ... the matter of relocation didn't seem to be a problem...."

2. The Department admits that this confirmation letter was prepared and properly signed by a personnel management specialist in accordance with prescribed procedures. See letter dated July 27, 1981, to the General Accounting Office.

*standing that my household goods would be moved from ... Texas to the Washington, D.C., area. This was confirmed in a letter from Commerce dated October 24, 1980 ....* As of the date of this memorandum, I have not received *confirming orders ... as agreed ....*

I request that the Department issue such orders ... necessary for me to move my household goods *at government expense or advise me in writing otherwise by January 9, 1981....*" [3]

Failing to receive an early response to the above, on January 30, 1981, plaintiff again wrote a letter to Mr. Zetty and stated therein, *inter alia,* that:

"... I have been told by Bob Heinemann, Deputy Director OAS, that the General Counsel's office advised that the Department could not pay for the movement of my household goods, I am still waiting for a written response."

On that same day, *i.e.,* January 30, 1981, as indicated in the letter to Mr. Zetty dated January 30, 1981, plaintiff shipped his household effects to Washington, D.C., despite the *prior* advice, albeit verbal, that the government could not pay for the relocation of his personal household effects.

By an interoffice memorandum to plaintiff dated February 3, 1981, defendant formally, but belatedly, advised plaintiff that "... it has been determined that you are not entitled to movement of household goods at Government expense." This written advice mirrored the negative verbal advice plaintiff received from Mr. Heinemann prior to January 30, 1981.

Plaintiff thereafter administratively pursued a claim for reimbursement of his moving expenses ($3,285.66) from Texas to

Washington, D.C., and on August 27, 1981, the General Accounting Office (GAO) advised him that his claim "may not be allowed." Also, in response to plaintiff's request for reconsideration, on July 27, 1982, the GAO reaffirmed its determination of August 27, 1981.

## CONTENTIONS OF THE PARTIES

Though inartfully drawn and not a *pro forma* model of draftsmanship, plaintiff's Petition and Reply to Defendant's Motion to Dismiss appear to premise his case on one or both of the following grounds: (i) promissory estoppel, and/or (ii) an "express or implied contract" within the contemplation of the Tucker Act, 28 U.S.C. § 1491. The bases for the foregoing, apparently as perceived by plaintiff, are bottomed on the fact that he accepted the offer of defendant, as set forth in the letter of October 24, 1980, consistent with the tenor of prior negotiations; he has reported to work in the agreed capacity since November 3, 1980, and had performed his duties for a continuous period of three months before he was formally advised that the government was changing its initial position as set forth in the offering letter of October 24, 1980; and since he acted in good faith in relying on the representations of the government, which induced him to act and he did so act to his detriment, at the very least defendant is morally obligated to reimburse him.

Conversely, defendant contends that the petition should be dismissed for two reasons; first, on the grounds of failure to state a claim upon which relief can be granted, notwithstanding the fact that the advice given plaintiff was erroneous, because 5 U.S.C. § 5723,[4] gives plaintiff no comfort; and secondly, defendant is not

---

**3.** A set of confirming orders admittedly was prepared by the Department; however, the orders were disapproved by the Accounting Division. See letter dated July 27, 1981, to the General Accounting Office.

**4.** Section 5723 provides, in pertinent parts, as follows:

"(a) Under such regulations as the President may prescribe ... an agency may pay from its appropriations—

(1) travel expenses of a new appointee, ... to a position in the United States for which the Office of Personnel Management determines there is a manpower shortage or of a new appointee to the Senior Executive Service; ...."

Plaintiff does not claim nor is there any proof that his appointment was to a position in which there was a "manpower shortage" or to the "Senior Executive Service."

bound by such erroneous representations of its agents under the circumstances here.

The dispositive issue raised by the foregoing, therefore, is whether a promise made by an officer or an agent of the government to pay a new employee's moving expenses to his initial duty station is legally binding on the government where there is no existing statutory or regulatory authority to support such payments.

## DISCUSSION

Addressing the estoppel theory first, plaintiff apparently premises his prayer for relief on promissory estoppel rather than on an equitable estoppel theory.[5] Section 90 of the Restatement (Second) of Contracts defines the doctrine of promissory estoppel in the following terms:

"A promise which the promisor should reasonably expect to induce action or forbearance on the part of the promisee or a third person and which does induce such action or forbearance is binding if the injustice can be avoided only by enforcement of the promise. The remedy for breach may be limited as justice requires."

Here, the promise to pay plaintiff's relocation expenses from Texas to Washington, D.C., was specifically expressed in the defendant's written confirmation of plaintiff's appointment dated October 24, 1980. Moreover, as noted earlier, plaintiff twice indicated to defendant prior to the offer that his acceptance of any employment offer would be "greatly influenced" by the government's willingness to reimburse him for such expenses. Given the foregoing, plaintiff undoubtedly claims that he was induced to act in reliance on defendant's promise, by accepting the offer of employment and moving his household goods from Texas to Washington, D.C. His threshold position is, therefore, that because the

government expected and intended that he rely on the written promise to reimburse, it should be held liable to him for the expenses incurred since justice can be done only by enforcing the promise.

Because it appears that plaintiff would have no basis for an action in the absence of the government's erroneous promise, we are therefore of the opinion that this is a promissory, rather than an equitable, estoppel claim since plaintiff is apparently relying on the written promise to create his right of recovery in this court.

■ Notwithstanding the foregoing promise and induced reliance, the threshold question to be addressed here, however, is whether this court has jurisdiction to entertain actions based on promissory estoppel. Plaintiff brought this action ostensibly under the Tucker Act, 28 U.S.C. § 1491, which provides, *inter alia*, that this court has jurisdiction over:

"... any claim against the United States founded either upon the Constitution, or any Act of Congress, or any regulation of an executive department, or upon any express or implied contract with the United States ...."

The Tucker Act, being a waiver of sovereign immunity, necessarily greatly limits the jurisdiction of this court. Consequently, "the court must exercise not only the traditional reluctance of federal courts to act absent specific statutory authorization, ... but an additional measure of restraint growing from the principle that waivers of sovereign immunity must be narrowly construed." *Connolly v. United States,* 1 Cl.Ct. 312, 314, 554 F.Supp. 1250 (1982) (KOZINSKI, C.J.) (citations omitted). *See also Biagioli v. United States,* 2 Cl.Ct. 304, 308 (1983).

In point of fact, the Ninth Circuit held in *Jablon v. United States,* 657 F.2d 1064, 1070

---

**5.** The difference between promissory estoppel and equitable estoppel was discussed by the Ninth Circuit Court of Appeals in *Jablon v. United States,* 657 F.2d 1064 (9th Cir.1981). There, the court observed that:

"... promissory estoppel is used to *create* a cause of action, whereas equitable estoppel is

used to bar a party from raising a defense or objection it otherwise would have, or from instituting an action which it is entitled to institute. *Promissory estoppel is a sword, and equitable estoppel is a shield.*"
*Id.* at 1068 (emphasis added). *See also Biagioli v. United States,* 2 Cl.Ct. 304, 307 (1983).

(9th Cir.1981), that promissory estoppel claims are outside the scope of the Tucker Act "because the United States has not waived its sovereign immunity with regard to a promissory estoppel cause of action . . . ." There, the court of appeals noted that a promissory estoppel theory is not an " 'express or implied-in-fact' contract" theory, and further observed that "our research reveals no cases construing the Tucker Act that have included awards based upon a promissory estoppel theory." *Id.* at 1070. In a recent lucid opinion, the Claims Court adopted this reasoning in *Biagioli v. United States*, 2 Cl.Ct. at 308, where Judge Nettesheim held that "the court will not broaden the waiver of sovereign immunity by allowing plaintiff to base his right to [relief] on promissory estoppel . . . ."

If the court were to accept plaintiff's theory, the case at bar would involve, in effect, the administrative waiver and/or the nullification by the Department of a duly-passed federal statute as a result of its letter of October 24, 1980, which promised to reimburse the plaintiff notwithstanding and contrary to the limitations set forth in 5 U.S.C. § 5723 and applicable regulations.[6] In an analogous case, *Montilla v. United States*, 198 Ct.Cl. 48, 64, 457 F.2d 978, 986–87 (1972), in which a governmental agent erroneously advised and misled a military officer to believe that he qualified for retirement benefits and said representation did in fact induce reliance to the detriment of the officer, upon the apparent assertion of promissory estoppel by plaintiff as a cause of action, the court there stated that:

" . . . we know of no case where an officer or agent of the government . . . has estopped the government from enforcing a law passed by Congress. Unless a law has been repealed or declared unconstitutional by the courts, it is a part of the supreme law of the land and no officer or agent can by his action or conduct waive its provisions or nullify its enforcement."

In disposing of *Montilla* favorably for the government, the predecessor Court of Claims further stated that:

"We think the decision of the Supreme Court in *Federal Crop Ins. Corp. v. Merrill*, 332 U.S. 380, 68 S.Ct. 1, 92 L.Ed. 10 (1947), controls and is dispositive of the case at bar . . . ." [198 Ct.Cl. at 61, 457 F.2d 978].

There the United States Supreme Court stated:

" * * * Whatever the form in which the Government functions, anyone entering into an arrangement with the Government takes the risk of having accurately ascertained that he who purports to act for the Government stays within the bounds of his authority. The scope of this authority may be explicitly defined by Congress or be limited by delegated legislation, properly exercised through the rule-making power . . . ." [198 Ct.Cl. at 62, 457 F.2d 978].

In light of the foregoing authorities, we therefore conclude that plaintiff's claim, insofar as it is based on promissory estoppel, must be dismissed for failure to state a claim upon which relief can be granted.[7]

---

**6.** Regulations issued pursuant to 5 U.S.C. § 5723, styled Chapter 2, Relocation Allowances, FPMR 101–7, provide, in pertinent part, that "Normally the cost which a new appointee incurs for travel and moving his residence to his first official station may not be paid by the Government. The provisions of 2–1.5f and 2–1.5g cover situations in which authority has been provided for the Government to pay certain costs incident to such moves." Subparagraphs f and g are captioned "Shortage-category appointees and student trainees" and "Overseas assignment and return" respectively, and are clearly inapplicable to plaintiff.

**7.** Moreover, even if plaintiff could maintain a claim against the United States based on prom-

issory estoppel, the facts before the court do not support a grant of such relief. Although defendant's promise upon which plaintiff bases this action was a written one, and one which confirmed verbal representations made earlier, plaintiff affirmatively *admits* that *prior* to the time his effects were shipped, he was told by Mr. Robert Heinemann, Deputy Director of OAS, that the General Counsel's Office "advised that the Department could not pay for the movement of my household goods . . . ." Nevertheless, plaintiff shipped his household goods on January 30, 1981, *prior* to receiving the requested written response on February 3, 1981, in which Mr. Zetty confirmed Mr. Heinemann's conclusion that plaintiff's moving ex-

 Finally, to the extent that plaintiff asserts a claim founded upon an "express or implied contract" within the meaning of the Tucker Act, it too must be dismissed because it is well established that the federal employment relationship is a statutory rather than a contractual one. *Danoff, et al. v. United States,* 2 Cl.Ct. 729 at 732 (1983) (MARGOLIS, J.); *Connolly,* 1 Cl.Ct. at 314; *Kania v. United States,* 227 Ct.Cl. 458, 464–65, 650 F.2d 264, 268, *cert. denied,* 454 U.S. 895, 102 S.Ct. 393, 70 L.Ed.2d 210 (1981). Thus, the rights of civilian and military public employees to pay and allowances, such as the relocation benefits claimed here, do not turn on contract doctrines "even where compacts are made." *Kania,* 227 Ct.Cl. at 465, 650 F.2d at 268; *Abel v. United States,* 219 Ct.Cl. 574, 576 (1979).

This point was recently emphasized by the Court of Claims in *Shaw v. United States,* 226 Ct.Cl. 240, 251, 640 F.2d 1254, 1260 (1981), a case in which plaintiff was initially hired in a "career executive" position and, in reliance thereon, was induced to act in a perceived detrimental manner. Following his appointment to said position, plaintiff was redesignated as a "non-career executive" and shortly thereafter was removed from employment in that position. There, the court emphasized that:

" . . . in cases like the one before us, the law is well settled that, 'public employment does not, * * * give rise to a contractual relationship in the conventional

sense.' [citations omitted]. Therefore, plaintiff may not base his theory of recovery on contract law since he was a federal employee. Federal officials who by act or word generate expectations in the persons they employ, and then disappoint them, do not *ipso facto* create a contract liability running from the Federal Government to the employee, as they might if the employer were not the government. [Plaintiff's] claim, so far as founded on contract, is shown by the instant record to be moral, not legal."

As the Supreme Court stated nearly a century ago:

" . . . the appointment to and tenure of an office created for the public use, . . . do not come within the import of the term *contracts,* or, in other words, the vested, private personal rights thereby intended to be protected. They are functions appropriate to that class of powers and obligations by which governments are entitled, and are called upon, to foster and promote the general good; functions, therefore, which governments cannot be presumed to have surrendered . . . ."

*Crenshaw v. United States,* 134 U.S. 99, 105, 10 S.Ct. 431, 433, 33 L.Ed. 825 (1889) (emphasis in original). Because of the foregoing precedents, this court is constrained to hold that plaintiff's employment relationship with the Department is not governed by contract principles, and he, therefore, may not press such a claim in this court under the Tucker Act.[8]

---

penses could not be paid by the Department. Thus, there is a serious question as to whether plaintiff's reliance on the written promise in the October 24, 1980 offer of employment was reasonable and justifiable.

**8.** Assuming, *arguendo,* that there is a contractual relationship here, "[t]he claimant for money damages for breach of an express or implied in fact contract must show that *the officer who supposedly made the contract had authority to obligate appropriated funds.*" *Kania,* 227 Ct.Cl. at 465, 650 F.2d at 268; *Grismac Corp. v. United States,* 214 Ct.Cl. 39, 556 F.2d 494 (1977) (emphasis added). In this case, the applicable statute, 5 U.S.C. § 5723, does not contemplate allowance of relocation benefits for new appointees such as plaintiff. Clearly then,

in representing to plaintiff that his moving expenses would be paid by the government, the Department officers involved were not acting within the scope of their authority. It is a long-standing rule, and one that has been applied consistently and stringently by this court, that the "Government cannot be bound by the unauthorized acts of its agents." *Lomas & Nettleton Co. v. United States,* 1 Cl.Ct. 641, 645 (1982); *Lehner v. United States,* 1 Cl.Ct. 408, 415 (1983). One dealing with the federal government does so at his own risk that a government employee or official has actual authority to make any agreement reached. *Lehner,* 1 Cl.Ct. at 415. *See generally Schweiker v. Hansen,* 450 U.S. 785, 101 S.Ct. 1468, 67 L.Ed.2d 685 (1981); *Federal Crop Insurance Corp. v. Merrill,* 332 U.S. 380, 68 S.Ct. 1, 92 L.Ed. 10 (1947).

## CONCLUSION

It is clear from the foregoing that contract liability enforceable in this court under the Tucker Act waiver of sovereign immunity provisions, as contemplated by Congress, does not extend to every agreement, understanding, or compact which can semantically be framed in terms of offer and acceptance or meeting of minds. As the court stated in the *Montilla* case, *supra,* 198 Ct.Cl. at 63, 457 F.2d at 986:

"... One can well imagine the chaos that would result if the thousands of [government agents] could by their actions and conduct make null and void the provisions of laws duly passed ...."

This observation no doubt formed the predicate for the Court of Claims to there underscore the long-standing admonition that "[i]t [is] the duty of all courts to observe the conditions defined by Congress for charging the public treasury."

Because plaintiff cannot maintain a claim either upon a promissory estoppel or an express or implied contract theory under the Tucker Act, and because no statutory or regulatory authority provides the relief demanded in the petition, defendant's motion to dismiss is hereby granted, and plaintiff's petition is dismissed.

IT IS SO ORDERED.